IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00300-CV

 

Katarzyna Brozynski, Law 

offices of Cornel Walker PC, 

and Cornel Walker,

                                                                      Appellants

 v.

 

Jared Kerney and Sheila Kerney,

                                                                      Appellees

 

 



From the 413th District Court

Johnson County, Texas

Trial Court No. 2004-00466

 



DISSENTING Opinion










 

          The complaints about frivolous
lawsuits or lawsuits that include frivolous claims, bombard us through the
media and, as in this case, requests for sanctions.  On more than this
occasion, this Court has reversed or refused to consider sanction awards for
filing a frivolous case or claim.

          At this juncture, no useful purpose
will be served by picking apart the majority’s recitation of the factual or legal
development of this appeal or their legal analysis.  So I will simply state
that, based upon my review of the issues as presented challenging the trial
court’s judgment for sanctions, I do not find an abuse of discretion.  I would
affirm the judgment for sanctions.  Accordingly, I respectfully dissent.

 

                                                          TOM
GRAY

                                                         Chief
Justice

 

Dissenting
opinion delivered and filed August 2, 2006






soIndex7, li.MsoIndex7, div.MsoIndex7
 {mso-style-update:auto;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:84.0pt;
 margin-bottom:.0001pt;
 text-indent:-12.0pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:12.0pt;
 font-family:"Franklin Gothic Medium";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
p.MsoIndex8, li.MsoIndex8, div.MsoIndex8
 {mso-style-update:auto;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:96.0pt;
 margin-bottom:.0001pt;
 text-indent:-12.0pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:12.0pt;
 font-family:"Franklin Gothic Medium";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
p.MsoIndex9, li.MsoIndex9, div.MsoIndex9
 {mso-style-update:auto;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:1.5in;
 margin-bottom:.0001pt;
 text-indent:-12.0pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:12.0pt;
 font-family:"Franklin Gothic Medium";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
p.MsoToc1, li.MsoToc1, div.MsoToc1
 {mso-style-update:auto;
 mso-style-next:Normal;
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:12.0pt;
 font-family:"Franklin Gothic Medium";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
p.MsoToc2, li.MsoToc2, div.MsoToc2
 {mso-style-update:auto;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:12.0pt;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:12.0pt;
 font-family:"Franklin Gothic Medium";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
p.MsoToc3, li.MsoToc3, div.MsoToc3
 {mso-style-update:auto;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:24.0pt;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:12.0pt;
 font-family:"Franklin Gothic Medium";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
p.MsoToc4, li.MsoToc4, div.MsoToc4
 {mso-style-update:auto;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:12.0pt;
 font-family:"Franklin Gothic Medium";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
p.MsoToc5, li.MsoToc5, div.MsoToc5
 {mso-style-update:auto;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:48.0pt;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:12.0pt;
 font-family:"Franklin Gothic Medium";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
p.MsoToc6, li.MsoToc6, div.MsoToc6
 {mso-style-update:auto;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:60.0pt;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:12.0pt;
 font-family:"Franklin Gothic Medium";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
p.MsoToc7, li.MsoToc7, div.MsoToc7
 {mso-style-update:auto;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:1.0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:12.0pt;
 font-family:"Franklin Gothic Medium";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
p.MsoToc8, li.MsoToc8, div.MsoToc8
 {mso-style-update:auto;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:84.0pt;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:12.0pt;
 font-family:"Franklin Gothic Medium";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
p.MsoToc9, li.MsoToc9, div.MsoToc9
 {mso-style-update:auto;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:96.0pt;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:12.0pt;
 font-family:"Franklin Gothic Medium";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {margin-top:0in;
 margin-right:0in;
 margin-bottom:5.0pt;
 margin-left:0in;
 mso-para-margin-top:0in;
 mso-para-margin-right:0in;
 mso-para-margin-bottom:1.0gd;
 mso-para-margin-left:0in;
 text-align:justify;
 text-indent:13.7pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:10.0pt;
 font-family:"CG Times";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
p.MsoCommentText, li.MsoCommentText, div.MsoCommentText
 {margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:10.0pt;
 font-family:"Franklin Gothic Medium";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 tab-stops:center 3.0in right 6.0in;
 font-size:12.0pt;
 font-family:"Times New Roman";
 mso-fareast-font-family:"Times New Roman";}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 tab-stops:center 3.0in right 6.0in;
 font-size:12.0pt;
 font-family:"Times New Roman";
 mso-fareast-font-family:"Times New Roman";}
p.MsoIndexHeading, li.MsoIndexHeading, div.MsoIndexHeading
 {mso-style-next:"Index 1";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:12.0pt;
 font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 font-weight:bold;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-next:Normal;
 margin-top:6.0pt;
 margin-right:0in;
 margin-bottom:6.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:10.0pt;
 font-family:"Franklin Gothic Medium";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 font-weight:bold;}
p.MsoTof, li.MsoTof, div.MsoTof
 {mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:24.0pt;
 margin-bottom:.0001pt;
 text-indent:-24.0pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:12.0pt;
 font-family:"Franklin Gothic Medium";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.MsoFootnoteReference
 {mso-ansi-font-size:10.0pt;
 font-family:"CG Times";
 mso-ascii-font-family:"CG Times";
 mso-hansi-font-family:"CG Times";
 vertical-align:super;}
span.MsoCommentReference
 {mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;}
span.MsoEndnoteReference
 {vertical-align:super;}
p.MsoEndnoteText, li.MsoEndnoteText, div.MsoEndnoteText
 {margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:10.0pt;
 font-family:"Franklin Gothic Medium";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
p.MsoToa, li.MsoToa, div.MsoToa
 {mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:12.0pt;
 margin-bottom:.0001pt;
 text-indent:-12.0pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:12.0pt;
 font-family:"Franklin Gothic Medium";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
p.MsoMacroText, li.MsoMacroText, div.MsoMacroText
 {mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 tab-stops:24.0pt 48.0pt 1.0in 96.0pt 120.0pt 2.0in 168.0pt 192.0pt 3.0in;
 font-size:10.0pt;
 font-family:"Courier New";
 mso-fareast-font-family:"Times New Roman";}
p.MsoToaHeading, li.MsoToaHeading, div.MsoToaHeading
 {mso-style-next:Normal;
 margin-top:6.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:12.0pt;
 font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 font-weight:bold;}
p.MsoBlockText, li.MsoBlockText, div.MsoBlockText
 {margin-top:0in;
 margin-right:23.4pt;
 margin-bottom:12.0pt;
 margin-left:23.4pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:12.0pt;
 font-family:"CG Times";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
p.MsoDocumentMap, li.MsoDocumentMap, div.MsoDocumentMap
 {margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 background:navy;
 font-size:12.0pt;
 font-family:Tahoma;
 mso-fareast-font-family:"Times New Roman";}
p.MsoCommentSubject, li.MsoCommentSubject, div.MsoCommentSubject
 {mso-style-parent:"Comment Text";
 mso-style-next:"Comment Text";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 tab-stops:23.4pt .65in 70.2pt 1.3in 117.0pt 1.95in 163.8pt 2.6in 210.6pt 3.25in 257.4pt 3.9in 304.2pt 4.55in 351.0pt 5.2in 397.8pt 5.85in 444.6pt 6.5in;
 font-size:10.0pt;
 font-family:"Franklin Gothic Medium";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 font-weight:bold;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-page-numbers:1;
 mso-title-page:yes;
 mso-footer:url("0400128CR.InreCharlesLRyan.twg.jw.DIS._files/header.htm") f1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
@page Section2
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("0400128CR.InreCharlesLRyan.twg.jw.DIS._files/header.htm") f2;
 mso-paper-source:0;}
div.Section2
 {page:Section2;}
 /* List Definitions */
 @list l0
 {mso-list-id:-132;
 mso-list-type:simple;
 mso-list-template-ids:1885535664;}
@list l0:level1
 {mso-level-tab-stop:1.25in;
 mso-level-number-position:left;
 margin-left:1.25in;
 text-indent:-.25in;}
@list l1
 {mso-list-id:-131;
 mso-list-type:simple;
 mso-list-template-ids:1404486060;}
@list l1:level1
 {mso-level-tab-stop:1.0in;
 mso-level-number-position:left;
 margin-left:1.0in;
 text-indent:-.25in;}
@list l2
 {mso-list-id:-130;
 mso-list-type:simple;
 mso-list-template-ids:-2014289186;}
@list l2:level1
 {mso-level-tab-stop:.75in;
 mso-level-number-position:left;
 margin-left:.75in;
 text-indent:-.25in;}
@list l3
 {mso-list-id:-129;
 mso-list-type:simple;
 mso-list-template-ids:-758742496;}
@list l3:level1
 {mso-level-tab-stop:.5in;
 mso-level-number-position:left;
 text-indent:-.25in;}
@list l4
 {mso-list-id:-128;
 mso-list-type:simple;
 mso-list-template-ids:-2117726804;}
@list l4:level1
 {mso-level-number-format:bullet;
 mso-level-text:\F0B7;
 mso-level-tab-stop:1.25in;
 mso-level-number-position:left;
 margin-left:1.25in;
 text-indent:-.25in;
 font-family:Symbol;}
@list l5
 {mso-list-id:-127;
 mso-list-type:simple;
 mso-list-template-ids:-175334918;}
@list l5:level1
 {mso-level-number-format:bullet;
 mso-level-text:\F0B7;
 mso-level-tab-stop:1.0in;
 mso-level-number-position:left;
 margin-left:1.0in;
 text-indent:-.25in;
 font-family:Symbol;}
@list l6
 {mso-list-id:-126;
 mso-list-type:simple;
 mso-list-template-ids:1182719360;}
@list l6:level1
 {mso-level-number-format:bullet;
 mso-level-text:\F0B7;
 mso-level-tab-stop:.75in;
 mso-level-number-position:left;
 margin-left:.75in;
 text-indent:-.25in;
 font-family:Symbol;}
@list l7
 {mso-list-id:-125;
 mso-list-type:simple;
 mso-list-template-ids:-578265002;}
@list l7:level1
 {mso-level-number-format:bullet;
 mso-level-text:\F0B7;
 mso-level-tab-stop:.5in;
 mso-level-number-position:left;
 text-indent:-.25in;
 font-family:Symbol;}
@list l8
 {mso-list-id:-120;
 mso-list-type:simple;
 mso-list-template-ids:-561227474;}
@list l8:level1
 {mso-level-tab-stop:.25in;
 mso-level-number-position:left;
 margin-left:.25in;
 text-indent:-.25in;}
@list l9
 {mso-list-id:-119;
 mso-list-type:simple;
 mso-list-template-ids:-1932244670;}
@list l9:level1
 {mso-level-number-format:bullet;
 mso-level-text:\F0B7;
 mso-level-tab-stop:.25in;
 mso-level-number-position:left;
 margin-left:.25in;
 text-indent:-.25in;
 font-family:Symbol;}
ol
 {margin-bottom:0in;}
ul
 {margin-bottom:0in;}
-->










 

IN THE

TENTH COURT OF
APPEALS

 




 
 
 
 
 
 
 


 

 



No. 10-04-00128-CR

 

In re Charles L. Ryan

 

 



Original
Proceeding

 

 



dissenting Opinion



 








      This
is an original proceeding for a writ of mandamus.  The “let’s just do it” attitude of the
majority’s opinion evidences a total lack of regard for the actions required of
a relator in order to obtain a writ or of a criminal defendant to enjoy the
benefits of the statute regulating the transfer of prisoners among
jurisdictions.  The majority decides the
proceeding based on events that occurred after the petition was filed, on
documents that are not in the record, and on issues that Relator has not
briefed, and misconstrues or misapplies the statute.  It is hard to imagine how the majority could
make more errors in a single proceeding.

      Relator,
Charles L. Ryan, has filed a Petition for Expeditious Mandamus, in which he
seeks a writ compelling Respondent, Hon. William R. Anderson, Jr., Judge of
Johnson County Court at Law No. 2, to dismiss a warrant, as Relator argues,
pursuant to the Interstate Agreement on Detainers Act.[1]  See Interstate Agreement on Detainers
Act (“IADA”), 18 U.S.C. app. (2000), 18 U.S.C.A. app. 2 (2000) (federal IADA); see also Tex. Code Crim. Proc. Ann. Art. 51.14 (Vernon 1979) (Tex. IADA).[2]  The
Interstate Agreement on Detainers (“IAD”) is an “interstate compact” that
“establish[es] procedures for resolution of one State’s outstanding charges
against a prisoner of another State.”  Alabama v. Bozeman, 533 U.S. 146, 148 (2001); New York v. Hill, 528 U.S. 110, 111 (2000); see State v. Williams, 938 S.W.2d 456, 460 (Tex. Crim. App. 1997); State v. Sephus, 32 S.W.3d 369, 375
(Tex. App.—Waco 2000, pet. ref’d).

      The
majority’s application of the law to the facts of this case, in its entirety,
is as follows:

      The IAD requires that a
dismissal that falls within its parameters be “with prejudice.”  Thus, Ryan is entitled to the relief he
seeks.

(In re
Ryan, No. 10-04-00128-CR, slip op. at [1] (Tex. App.—Waco Oct. 20, 2004, orig. proceeding [no mand. h.]) (majority op.)
(not designated for publication)); see IADA,
18 U.S.C. app. § 2, arts. III(d), IV(e), V(c); see also Tex. Code Crim.
Proc. Ann. Art. 51.14, arts. IV(e), V(c).[3]

      I
respectfully dissent.  Like a first-year
law student, the majority leaps directly to the issue of the remedy, without
considering the necessary prerequisite issues of whether Relator’s case “falls
within [the] parameters” of the IADA, or how Relator is “entitled” to
relief.  (Cf. slip op. at [1].)  Here,
those prerequisite issues comprise all of the core issues of mandamus practice,
including Relator’s failure to serve the parties, Relator’s failure to file a
record, Relator’s failure to present his request to Respondent, the absence of
any abuse of discretion by Respondent, and the “fundamental tenet” of mandamus
practice—Relator’s adequate remedies at law; as well as issues of IADA
practice.  See Walker v.
Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding) (quoting Holloway v. Fifth Court of Appeals, 767
S.W.2d 680, 684 (Tex. 1989) (orig. proceeding)).[4]

I.    We
should strike or dismiss the petition.

      In
the first place, we should strike or dismiss Relator’s petition.  It does not show that Relator served Real
Party in Interest, namely the State of Texas in the person of Bill Moore, County Attorney of Johnson County.  On June 21, 2004, this
Court’s Clerk notified Relator that the petition “does not conform with the
requirements of the Rules of Appellate Procedure because it does not contain a
certificate of service indicating that relator has provided a copy of the
petition to the respondent or the real party in interest” (citing Tex. R. App. P. 9.5).  The Clerk further notified Relator, “If
relator fails to correct these deficiencies within 10 days after the date of
this letter, the petition will be struck” (citing Tex. R. App. P. 9.4(i)). 
On July 9, 2004, Relator tendered a Certificate of Service to
the effect that he had served Respondent, but did not certify that he had
served Real Party in Interest.  Nor does
Relator suggest that he served his untimely Appendix even on Respondent.  We have allowed Relator an adequate
opportunity to correct those deficiencies. 
Accordingly, we should strike the petition.  See
Tex. R. App. P. 9.4(i), 9.5; In re Galer, No. 10-04-00134-CR, 2004
Tex. App. LEXIS 7062 (Tex. App.—Waco Aug. 4, 2004, orig. proceeding) (mem. op.) (per curiam)
(striking petition); In re Thomas, No.
10-03-164-CV, 2003 Tex. App. LEXIS 4805, at *1 (Tex. App.—Waco May 29, 2003, orig. proceeding) (mem. op.) (per curiam)
(striking petition); but see In re
Arledge, No. 10-02-072-CR, slip op. at 2 (Tex. App.—Waco Apr. 24, 2002, orig. proceeding) (not designated for
publication) (per curiam) (denying petition); In re Hensler, 27 S.W.3d 719, 720 (Tex. App.—Waco 2000, orig.
proceeding) (per curiam) (denying petition).

      In
the alternative, we should dismiss the petition.  See In
re State, 26 S.W.3d 759, 760 (Tex. App.—Waco 2000, orig. proceeding) (Gray,
J., dissenting).

II.   We
should deny the petition.

      In
the alternative, we should deny the petition. 
Relator failed to comply with both procedural and substantive
requirements of mandamus law.  A relator
is not eligible for a writ of mandamus unless he or she satisfies the
procedural and substantive requirements for the writ, “no matter how much his
situation might tug at judicial heartstrings.” 
De Leon v.
Aguilar, 127 S.W.3d 1, 6 (Tex.
Crim. App. 2004) (orig. proceeding).

      The
courts of appeals are authorized to issue writs of mandamus.  Tex.
Const. art. V, § 6(a); Tex.
Gov’t Code Ann. § 22.221(a)-(b) (Vernon 2004). “The writ of
mandamus is ‘[a] writ issued by a superior court to compel a lower court or
government officer to perform mandatory or purely ministerial duties
correctly.”  In re Chu, 134 S.W.3d 459, 461 (Tex. App.—Waco 2004, orig.
proceeding) (quoting Black’s Law
Dictionary 973 (7th ed. 1999)); see
Black’s Law Dictionary 980
(8th ed. 2004).

      Yet
“mandamus is an extraordinary remedy.”  De Leon, 127 S.W.3d at 6. 
“As the name implies, extraordinary writs issue ‘only in situations
involving manifest and urgent necessity and not for grievances that may be
addressed by other remedies.’”  Holloway, 767 S.W.2d at 684 (quoting
[James B.] Sales, Original Jurisdiction
of the Supreme Court and the Courts of Civil Appeals of Texas, in Appellate Procedure in Texas [3, at]
§ 1.4[1][b] ([Orville C. Walker ed.,] 2d ed. 1979)) (bracketed “[1][b]” in
orig.).  Thus mandamus is “to be used
sparingly.”  Guerra v. Garza, 987 S.W.2d 593, 594 (Tex. Crim. App. 1999) (orig.
proceeding).  The issuance of the writ of
mandamus “is never a matter of right but rests in the sound discretion of the
Court.”  Smith v. Gohmert, 962 S.W.2d 590, 592 (Tex. Crim. App. 1998) (orig.
proceeding).  Courts thus take a
“cautious view of the mandamus remedy.”  State ex rel. Sutton v. Bage, 822 S.W.2d
55, 56 (Tex. Crim. App. 1992) (orig. proceeding).

II.   A.   Relator fails to comply with procedural
mandamus requirements.

      Relator
fails to comply with several of the procedural requirements for the issuance of
the writ of mandamus.[5]  Besides
the failings noted above that call for denial, (see supra Part I; Arledge,
No. 10-02-072-CR, slip op. at 2; Hensler,
27 S.W.3d at 720), Appellant fails to file a record, an Appendix, or
affidavits.

II.   A.   1.    Relator fails to present a record.

      Relator
has failed to provide the Court with a record sufficient to establish his right
to mandamus relief.  “As the parties
seeking relief, [relators] ha[ve] the burden of providing th[e] Court with a
sufficient record to establish their right to mandamus relief.”  Walker,
827 S.W.2d at 837; accord
TransAmerican Natural Gas Corp. v. Flores, 870 S.W.2d 10, 11 (Tex. 1994)
(orig. proceeding); In re Mendoza, 131
S.W.3d 167, 168 (Tex. App.—San Antonio 2004, orig. proceeding); In re Davidson, No. 07-04-0040-CV, 2004
Tex. App. LEXIS 1672, at *1-*2 (Tex. App.—Amarillo Feb. 19, 2004, orig.
proceeding) (underlying criminal case); In
re Villarreal, 96 S.W.3d 708, 711 (Tex. App.—Amarillo 2003, orig.
proceeding) (underlying criminal case). 
Accordingly, we should deny the petition.

II.   A.   1.    a.    Relator fails to file a record.

      First,
Relator has failed to provide the Court with a record, strictly speaking, at
all.  The Texas Rules of Appellate
Procedure provide that “Relator must file with the petition . . . a
certified or sworn copy of every document that is material to the relator’s
claim for relief and that was filed in any underlying proceeding,” which
constitutes the record.  Tex. R. App. P. 52.7(a).  “[I]t is clear that a court of appeals may
not grant mandamus relief when the petition and record require the court to
speculate.”  In re Cap Rock Elec. Coop., Inc., 35 S.W.3d 222, 226 (Tex.
App.—Texarkana 2000, orig. proceeding). 
A court should deny a petition for writ of mandamus when the relator
does not file the record required by Rule 52.7(a).  See In
re Salazar, No. 08-04-00087-CV, 2004 Tex. App. LEXIS 4411, at *1 (Tex.
App.—El Paso May 6, 2004, orig. proceeding); cf. In re Taylor, 28 S.W.3d 240, 247 (Tex. App.—Waco 2000, orig.
proceeding), overruled on other grounds,
In re Z.L.T., 124 S.W.3d 163, 166 (Tex. 2003) (termination of parental
rights).

      Relator
has not filed that record.  In order for
Relator to demonstrate his eligibility for mandamus relief, his record would
have to contain, at a minimum, any charging instrument of which he complains.  Cf. IADA,
18 U.S.C. app. § 2, art. V(c) (“indictment, information, or complaint”); cf. also Tex. Code Crim. Proc. Ann. Art. 51.14, art. V(c) (same).  Because it does not, we should deny the
petition.

II.   A.   1.    b.    Relator
fails to file an Appendix.

      Relator
has also failed to include an Appendix to his petition.  The Rules of Appellate Procedure provide,
“The petition must . . . contain . . . [an] Appendix,”
which “must contain . . . a certified or sworn copy of any order
complained of, or any other document showing the matter complained of.”  Tex.
R. App. P. 52.3(j)(1)(A); see 10th Tex. App. (Waco) Loc. R. 17(b). 
A relator’s Appendix must be “sufficient to enable” the court “to assess
his complaints.”  Villarreal, 96 S.W.3d at 710. 
A court should deny a petition for writ of mandamus that does not
include an Appendix.  See id.; e.g., In re Sepeda, No. 08-04-00129-CV, 2004 Tex. App. LEXIS 7611,
at *1-*2 (Tex. App.—El
 Paso Aug. 25,
 2004, orig.
proceeding); In re Bailey, 102 S.W.3d
895, 895 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (per
curiam).

      Relator
has not filed that Appendix.  When
Relator filed his petition, it was accompanied only by three unsworn exhibits:
purported (1) “IADA Documents,” (2) “Motion to Dismiss Pending
Misdemeanor Charge,” and (3) “Program Staff Reviews.”  (Pet. Exs. A-C.)  This Court’s Clerk notified Relator that
Relator “ha[d] not provided certified or sworn copies of the documents attached
to the petition” (citing Tex. R. App.
P. 52.7) (record).  The Clerk further
notified Relator, “If relator fails to correct th[is] deficienc[y] within 10
days after the date of this letter, the petition will be struck” (citing Tex. R. App. P. 9.4(i)).  Relator provided copies of “IADA paperwork”
certified by the custodian of records of the institution where Relator is
imprisoned, and the Clerk filed those copies as Relator’s Appendix.  See
Tex. R. App. P. 52.3(j)(1)(A);
(Pet. App.).  Relator did not provide a
certified or sworn copy of his purported motion to dismiss.  (See Pet.
Ex. B.)  The exhibit to Relator’s
petition is handwritten—not a photocopy or carbon copy, but a holograph
manuscript.  (Id.)  It does
not contain a certificate of service, and does not bear a file-mark.  (Id.)  Nor did
Relator provide certified or sworn copies of his purported Program Staff
Reviews.  (See Pet. Ex. C.)  In order
for Relator to demonstrate his eligibility for mandamus relief, his Appendix
would have to contain, at a minimum, certified or sworn copies of the warrant
that he seeks to have dismissed and of the detainer that he contends was lodged
against him.  Cf. IADA, 18 U.S.C. app. § 2, art. V(c) (charging instrument
“on the basis of which the detainer has been lodged”); cf. also Tex. Code Crim.
Proc. Ann. Art. 51.14, art. V(c) (same). 
Because it does not, we should deny the petition.

II.   A.   1.    c.    Relator fails to file affidavits.

      The
Rules of Appellate Procedure require of petitions for writs of mandamus that
“[a]ll factual statements in the petition must be verified by affidavit made on
personal knowledge by an affiant competent to testify to the matters
stated.”  Tex. R. App. P. 52.3. 
The failure to do so is fatal.  See Kopeski v. Martin, 629 S.W.2d 743,
745 (Tex. Crim. App. 1982) (orig. proceeding); Barnes v. Whittington, 751 S.W.2d 493, 495 (Tex. 1988) (orig. proceeding) (interpreting Tex. R. App. P. 121, 49 Tex. B.J. 556, 586-87 (Tex. Crim. App.
& Tex. 1986) (repealed 1997) (current version at Tex. R. App. P. 52.3)); In
re Aguirre, No. 14-04-00106-CV, 2004 Tex. App. LEXIS 1577, at *1 (Tex. App.—Houston [14th Dist.] Feb. 19, 2004, orig. proceeding) (per curiam); In re Kuhler, 60 S.W.3d 384, 385 (Tex.
App.—Amarillo 2001, orig. proceeding); cf.
Taylor, 28 S.W.3d at 245.

      Relator
has not filed such affidavits.  Nor is
the petition verified or supported by unsworn declaration.  Cf.
28 U.S.C. § 1746 (2000).  In order
for Relator to demonstrate his eligibility for relief, his numerous statements
of fact not otherwise shown in the record would have to be verified by
affidavit.  Because Relator has not done
so, we should deny the petition.

II.   A.   2.    Relator fails to show that he presented his
complaint to Respondent.

      Next,
the record does not show that Relator presented his request to Respondent, or
that Respondent refused Relator’s request.

      “A party’s
right to mandamus relief generally requires a predicate request for some action
and a refusal of that request.”  In re Perritt, 992 S.W.2d 444, 446 (Tex.
1999) (orig. proceeding); see Bd. of
Pardons & Paroles ex rel. Keene v. Court of Appeals, 910 S.W.2d 481,
484 n.4 (Tex. Crim. App. 1995) (orig. proceeding); Parker v. State, 397 S.W.2d 853, 856 (Tex. Crim. App. 1965) (op. on
reh’g); Ex parte Roper, 61 Tex. Crim.
68, 77-78, 134 S.W. 334, 339 (1910) (op. on orig. submission); see also Chu, 134 S.W.3d at 467; Davidson, 2004 Tex. App. LEXIS 1672, at
*2; In re Torres, 130 S.W.3d 409,
412-13 (Tex. App.—Corpus Christi 2004, orig. proceeding) (underlying criminal
case).  “As a rule, mandamus is not
available to compel an action which has not first been demanded and
refused.”  Terrazas v. Ramirez, 829 S.W.2d 712, 723 (Tex. 1991) (orig. proceeding).  In order for mandamus to lie, the respondent
“must have refused to act; that is, he must have explicitly denied motions
intended to compel” the action that the relator seeks to compel.  Axelson,
Inc. v. McIlhany, 798 S.W.2d 550, 556 (Tex. 1990) (orig. proceeding).  Even “[s]howing that a motion was filed with
the court clerk does not constitute proof that the motion was brought to the
trial court’s attention or presented to the trial court with a request for a
ruling.”  Davidson at *2-*3.

      The
only exception to this requirement is “when the request would have been futile
and refusal little more than a formality.” 
Perritt, 992 S.W.2d at 446
(quoting Terrazas, 829 S.W.2d at
723).  The record gives no reason to
believe that, that exception would apply in the instant cause.

      Here,
Relator does not even show that he filed a motion with the trial court
clerk.  Relator certainly does not show
that he presented a motion to Respondent, or that Respondent denied a
motion.  Accordingly, Relator does not
show that he is eligible for a writ of mandamus.

II.   B.   Relator
fails to show that he is eligible for relief as a matter of substantive
mandamus law.

      “To
obtain relief through mandamus, a relator must meet both prongs of the
traditional two-step test for issuance of mandamus.”  State
ex rel. Cobb v. Godfrey, 739 S.W.2d 47, 48 (Tex. Crim. App. 1987) (orig.
proceeding); accord State ex rel. Hill v.
Court of Appeals, 34 S.W.3d 924, 928 n. 6 (Tex. Crim. App. 2001) (orig.
proceeding).  That is, a court may grant
a writ of mandamus only if the relator “can demonstrate that the act sought to
be compelled is purely ‘ministerial’ and that” the relator “has no adequate
legal remedy.”  De Leon, 127 S.W.3d at
5 (quoting State ex rel. Rosenthal v.
Poe, 98 S.W.3d 194, 198 (Tex. Crim. App. 2003) (orig. proceeding)).  “The burden of establishing an abuse of
discretion and an inadequate appellate remedy is on” the relator, “and this
burden is a heavy one.”  In re CSX Corp., 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding) (per curiam); see Banales v. Court of Appeals, 93
S.W.3d 33, 35 (Tex. Crim. App. 2002) (orig. proceeding); State ex rel. Holmes v. Third Court of Appeals, 860 S.W.2d 873, 880
(Tex. Crim. App. 1993) (orig. proceeding); see
also In re Am. Home Prods. Corp., 980 S.W.2d 506, 511 (Tex. App.—Waco 1998,
orig. proceeding [mand. denied]) (“onerous burden”).  Relator establishes neither.

II.   B.   1.    Relator fails to demonstrate that he has a
clear right to relief.

      The
record does not show that Relator has a right to relief.  In order to be eligible for a writ of
mandamus, “the relator must have a ‘clear right to the relief sought,’ meaning
that the merits of the relief sought are ‘beyond dispute.’”  Winters
v. Presiding Judge of Crim. Dist. Court No. 3, 118 S.W.3d 773, 775 (Tex.
Crim. App. 2003) (orig. proceeding) (quoting In re Rodriguez, 77 S.W.3d 459, 461 (Tex. App.—Corpus Christi 2002,
orig. proceeding)).  “The requirement of
a clear legal right necessitates that the law plainly describes the duty to be
performed such that there is no room for the exercise of discretion.”  Id.  That is,
“the court’s duty” must be “indisputably articulated.”  Id.

      Relator
seeks relief under the federal Interstate Agreement on Detainers Act (“IADA”).  See IADA,
18 U.S.C. app.; see also Tex. Code Crim. Proc. Ann. Art.
51.14.  The record does not show that
Relator has a right to relief under the IADA.

      The
Interstate Agreement on Detainers (“IAD”) is a compact to which the United States of America and Texas are party states.  IADA, 18 U.S.C. app. § 2; Bozeman, 533 U.S. at 149; see
Tex. Code Crim. Proc. Ann. Art.
51.14; Jones v. State, 803 S.W.2d
712, 718 n.4 (Tex. Crim. App. 1991); State
v. Miles, 101 S.W.3d 180, 184 n.2 (Tex. App.—Dallas 2003, no pet.).  “As ‘a congressionally sanctioned interstate
compact’ within the Compact Clause of the United States Constitution,
Art. I, § 10, cl. 3, the [IAD] is a federal law subject to
federal construction.”  Bozeman at 149 (quoting Hill, 528 U.S. at 111) (alteration in Bozeman); accord
Giles v. State, 908 S.W.2d 303, 304 (Tex. App.—El Paso 1995, pet. ref’d); see West
 Virginia ex rel. Dyer v. Sims,  341
U.S. 22, 28 (1951). 
The IAD is thus “subject to federal rather than state
construction.”  Cuyler v. Adams, 449 U.S. 433, 438 (1981); Johnson v. State, 900 S.W.2d 475, 479 (Tex. App.—Beaumont 1995), aff’d, 930 S.W.2d 589 (Tex. Crim. App.
1996) (per curiam); accord Odhinn v.
State, 2003 WY 169, ¶ 15, 82 P.3d 715, 720 (Wyo. 2003) (“United States
Supreme Court interpretations of the IAD are . . . binding on state
courts.”); cf. Ex parte Sanchez, 918
S.W.2d 526, 527 (Tex. Crim. App. 1996) (“The IAD is a state law as well as a
law of the United States.”).

      A
detainer is “a request filed by a criminal justice agency with the institution
in which a prisoner is incarcerated, asking that the prisoner be held for the
agency, or that the agency be advised when the prisoner’s release is
imminent.”  Fex v. Michigan, 507 U.S. 43, 44 (1993);  accord
Miles, 101 S.W.3d at 183 (quoting Fex
at 44); see United States v. Mauro,
436 U.S. 340, 359 (1978) (“a notification filed with the institution in which a
prisoner is serving a sentence, advising that he is wanted to face pending
criminal charges in another jurisdiction”) (quoting H.R. Rep. No. 91-1018, at 2 (1970) & S. Rep. No. 91-1356, at 2 (1970)
(legislative history of IADA)); see also
Bozeman, 533 U.S. at 148 (“a
legal order that requires a State in which an individual is currently
imprisoned to hold that individual when he has finished serving his sentence so
that he may be tried by a different State for a different crime”).

      The
purposes of the IADA are:

(1) “to encourage the expeditious and
orderly disposition of . . . charges” that are “outstanding against a
prisoner” and “determination of the proper status of any and all detainers
based on untried indictments, informations, or complaints” against “persons
already incarcerated in other jurisdictions”; and

(2) “to provide . . . cooperative
procedures” among “sending states” in which a prisoner is incarcerated and
“receiving states” in which the prisoner is to be tried.

See IADA, 18 U.S.C. app. § 2, arts. I,
II(b)-(c); see also Tex. Code Crim. Proc. Ann. Art. 51.14,
arts. I, II(b).  The IAD

basically (1) gives a prisoner the right to demand a trial
within 180 days; and (2) gives a State the right to obtain a prisoner for
purposes of trial, in which case the State (a) must try the prisoner
within 120 days of his arrival, and (b) must not return the prisoner to
his “original place of imprisonment” prior to that trial.

Bozeman, 533 U.S. at 151 [(quoting IADA, 18 U.S.C. app. § 2,
art. IV(e))].

      When
a prisoner seeks disposition of charges under the IAD, the burden of compliance
is on the prisoner.  Fex, 507 U.S. at 52; accord
McNulty v. State, No. 05-02-00635-CR,
2003 Tex. App. LEXIS 1802, at *6-*8 (Tex. App.—Dallas Feb. 28, 2003, no pet.)
(not designated for publication); Lindley
v. State, 33 S.W.3d 926, 930 (Tex. App.—Amarillo 2000, pet. ref’d); Morganfield v. State, 919 S.W.2d 731,
734 (Tex. App.—San Antonio 1996, no pet.) (quoting United States v. Henson, 945 F.2d 430, 434 (1st Cir. 1991)); Lara v. State, 909 S.W.2d 615, 617-18
(Tex. App.—Fort Worth 1995, pet. ref’d); Bryant
v. State, 819 S.W.2d 927, 930-31 (Tex. App.—Houston [14th Dist.] 1991, pet.
ref’d); Crosland v. State, 857 P.2d
943, 945-46 (Utah 1993) (orig. proceeding); see
Burton v. State, 805 S.W.2d 564, 575 (Tex. App.—Dallas 1991, pet. ref’d).

      Relator
argues under Article V of the IADA.  The
IADA provides:  “If the appropriate
authority shall refuse or fail to accept temporary custody of” a prisoner
offered under the IADA,

or in the event that an action on the
indictment, information, or complaint on the basis of which the detainer has
been lodged is not brought to trial within the period provided in article III
or article IV hereof, the appropriate court of the jurisdiction where the
indictment, information, or complaint has been pending shall enter an order
dismissing the same with prejudice, and any detainer based thereon shall cease
to be of any force or effect.

IADA, 18 U.S.C. app. § 2, art. V(c); see Tex.
Code Crim. Proc. Ann. Art. 51.14, art. V(c).

      Although,
in quoting IADA Article V, Relator refers to Article IV, (see Pet. at 3), the latter does not apply to him.  Article IV governs requests by receiving
states for temporary custody of prisoners.[6]  See IADA, 18 U.S.C. app. § 2, art. IV;
see also Tex. Code Crim. Proc. Ann. Art. 51.14, art. IV; Sephus, 32 S.W.3d at 373.

      IADA
Article III governs Relator’s case. 
Article III provides:

      Whenever
a person has entered upon a term of imprisonment in a penal or correctional
institution of a party State, and whenever during the continuance of the term
of imprisonment there is pending in any other party State any untried
indictment, information, or complaint on the basis of which a detainer has been
lodged against the prisoner, he shall be brought to trial within one hundred
and eighty days after he shall have caused to be delivered to the prosecuting
officer and the appropriate court of the prosecuting officer’s jurisdiction
written notice of the place of his imprisonment and his request for a final
disposition to be made of the indictment, information, or complaint
. . . .

IADA, 18 U.S.C. app. § 2, art. III(a); see Tex.
Code Crim. Proc. Ann. Art. 51.14, art. III(a).

      The
record before us shows that Relator is imprisoned in a correctional institution
of the Federal Bureau of Prisons.  (See Pet. App.)  That record, however, does not show that
Relator meets any other requirement for relief under the IADA.  Accordingly, Relator does not have a right to
relief under the IAD.

II.   B.   1.    a.    Relator fails to show that a detainer within
the meaning of the IADA is lodged against him.

      The
IADA permits a prisoner to request final disposition of an “indictment,
information, or complaint” pending against him or her when “there is pending in
any other party State any untried indictment, information, or complaint on the
basis of which a detainer has been lodged against the prisoner.”  IADA, 18 U.S.C. app. § 2, art. III(a); see Tex.
Code Crim. Proc. Ann. Art. 51.14, art. III(a).  Relator fails to show that any detainer, much
less a detainer within the meaning of the IAD, has been lodged against
him.  Accordingly, Relator does not have
a right to relief under the IADA.

II.   B.   1.    a.    i.    Relator fails to show that any detainer is
lodged against him.

      The
IADA permits a prisoner to request disposition of charges pending against him
or her in another state only when “a detainer has been lodged against the
prisoner.”  IADA, 18 U.S.C. app.
§ 2, art. III(a); see Tex. Code Crim. Proc. Ann. Art. 51.14,
art. III(a).  Relator does not show that
any detainer has been lodged against him.

      “The
IAD is specifically limited to charges on the basis of which detainers have
been filed.”  People v. Campbell, 742 P.2d 302, 306 (Colo. 1987). 
Where a state receiving a prisoner “never filed a detainer against” the
prisoner, the IAD “never became applicable,” and the receiving state “was never
bound by its provisions.”  Mauro, 436 U.S. at 361; accord
United States v.
Leon, 94 Fed. Appx. 808, 809
(10th Cir. 2004); see Boettcher v. Doyle,
No. 03-4001, 2004 U.S. App. LEXIS 15336, at *3-*4 (7th Cir. July 20, 2004)
(unclear whether receiving state lodged detainer against appellant).  “The provisions of Article III apply only
when a ‘detainer’ has first been ‘lodged against the prisoner’ with the
custodial jurisdiction.”  Miles, 101 S.W.3d at 183 (quoting Tex. Code Crim. Proc. Ann. Art. 51.14,
art. III(a)).  That is, “the provisions
of the [IADA] are triggered only when
a ‘detainer’ is filed with the custodial (sending) state by another (receiving)
state having untried charges against the prisoner.” [7]  Johnson, 900 S.W.2d at 479 (emphasis in
orig.) (quoting Mauro at 343).

      “Texas case law holds that a detainer is lodged when
the ‘detainer’ is ‘filed’ with the custodial institution.”  Miles, 101
S.W.3d at 183-84 (citing Ex parte Bynum, 772
S.W.2d 113, 115 (Tex. Crim. App. 1989) (per curiam)).  Federal Bureau of Prisons procedures,
however, require: “For a state or local authority to lodge a detainer against
an inmate in Bureau custody, . . . the requesting authority must
provide a copy of the warrant/abstract along with a cover letter requesting
placement of a detainer in its favor.”  U.S. Dep’t of
Justice, Fed. Bureau of Prisons, Inmate Systems Management Manual
§ 703(a) (2002), http://‌www‌.bop‌.gov/‌progstat/‌5800‌_‌013‌.pdf
(last visited Oct. 1, 2004).

      The
record before us either does not demonstrate, or affirmatively refutes, that Texas lodged a detainer against Relator.[8]  The
warden of the institution where Relator was imprisoned completed a Certificate
of Inmate Status, which was attached to Relator’s notice of his place of
imprisonment which he directed to Real Party in Interest.  (Pet. App. at [5], [6]); see IADA, 18 U.S.C. app. § 2, art. III(a); see also Tex. Code Crim. Proc. Ann. Art. 51.14, art. III(a).  The certificate states:

Detainers currently on file against this inmate
from your state are as follows:

-None-

(Pet. App. at [6].)  The record before us thus shows that Texas has not lodged a detainer against Relator.  Accordingly, Relator does not have a right to
relief under the IADA.

II.   B.   1.    a.    ii.    Relator fails to show that a detainer based on
a charging instrument pending against him is lodged against him.

      The
IADA provides that a prisoner may request disposition of an “untried
indictment, information, or complaint on the basis of which a detainer has been
lodged against the prisoner.”  IADA, 18
U.S.C. app. § 2, art. III(a); see
Tex. Code Crim. Proc. Ann. Art.
51.14, art. III(a).  Relator does not
show that any such detainer has been lodged against him.

       “Detainer,” within the meaning of the IADA,
“refers to ‘detainers based on untried indictments, informations, or
complaints.’”  United States v. Bottoms, 755 F.2d 1349, 1350 (9th Cir. 1985)
(quoting IADA, 18 U.S.C. app. § 2, art. I).  “The most natural interpretation of the words
‘indictment,’ ‘information,’ and ‘complaint’ is that they refer to documents
charging an individual with having committed a criminal offense.”  Carchman
v. Nash, 473 U.S. 716, 724 (1985) (citing Fed. R. Crim. P. 7 (indictment, information), 3 (complaint))
(interpreting IADA, 18 U.S.C. app. § 2, art. III); see Tex. Code Crim. Proc.
Ann. Arts. 21.01 (Vernon 1989) (indictment), 21.20 (Vernon 1989) (information), 2.05 (Vernon 1977) (complaint).  “[T]he provisions of the [IADA] are triggered
only when a ‘detainer’ is filed with
the custodial (sending) state by another (receiving) state having untried
charges against the prisoner.”  Johnson, 900 S.W.2d at 479 (emphasis in
orig.).

      A
detainer based on a warrant, however, does not fall within the IADA.  Carchman,
473 U.S. at 724-26 (probation violation warrant); Bottoms, 755 F.2d at 1350
(arrest warrant); Parker v. United
States, 590 A.2d 504, 507-508 (D.C. 1991) (warrant); State v. Carlton, 583 S.E.2d 1, 2-3 (Ga. 2003) (arrest warrant); Blakely v. Dist. Court, 755 P.2d 1380,
1384 (Mont. 1988) (orig. proceeding) (same); see also Mauro, 436 U.S. at 360-61 (writ of habeas corpus ad
prosequendum); McNulty, 2003 Tex.
App. LEXIS 1802, at *9 (same).

      Relator’s
unverified petition states, “On July 15, 2003 the Johnson County Sheriffs Office in Cleburne, Texas lodged a detainer against petitioner at Oxford FCI charging – DWI
Warrant # M200300270” [sic].  (Pet. at
2.)  Throughout his petition, Relator
refers only to a “warrant.”  See Tex.
Code Crim. Proc. Ann. Art. 15.02 (Vernon 1977) (stating requisites of warrant).  Relator nowhere refers to any charging
instrument pending against him upon which any detainer could have been
based.  (Cf. Pet. & App.) 
Accordingly, Relator does not show that he has a right to relief under
the IADA.

II.   B.   1.    b.    Relator fails to show that he caused notice
and request to be delivered to Respondent.

      IADA
Article III generally provides that a prisoner “shall be brought to trial
within one hundred and eighty days after he shall have caused to be delivered
to the prosecuting officer and the appropriate court of the prosecuting
officer’s jurisdiction written notice of the place of his imprisonment and his
request for final disposition to be made of the indictment, information, or
complaint” pending against the prisoner in another state that is a party to the
IAD.  IADA, 18 U.S.C. app. § 2, art.
III(a); see Tex. Code Crim. Proc. Ann. Art. 51.14, art. III(a).  Relator does not show that he caused such request
and notice to be delivered to Respondent.

      As
the United States Supreme Court has held in Fex
v. Maryland, “the 180-day time period in Article III(a) of the IAD does not
commence until the prisoner’s request for final disposition of the charges
against him has actually been delivered to the court and prosecuting officer of
the jurisdiction that lodged the detainer against him.”  Fex, 507
U.S. at 52; accord
Burton, 805 S.W.2d at 575; Bryant, 819 S.W.2d at 930-31. 
“Fex instructs us that the
IADA means what it says.  And when it
says that the prisoner must have his demand ‘delivered to the . . .
appropriate court,’ that is what it means.” 
United States v.
Rodriguez-Aguilera, 65 Fed.
Appx. 118, 119-20 (9th Cir. 2003) (quoting United
States v. Collins, 90 F.3d 1420, 1426 (9th Cir. 1996)) (ellipsis in Rodriguez-Aguilera); accord State v. Somerlot, 544 S.E.2d 52,
57-59 (W. Va. 2000) (collecting cases requiring strict
compliance with IADA).  “A vital aim of
the requirement of strict compliance is to assure that the appropriate
prosecuting authorities promptly are placed on notice when Article III is
invoked by an inmate.”  Henson, 945 F.2d at 434.

      For
purposes of notice and request under the IADA, the “appropriate court” is the
court “where the charge is pending.”  Bryant, 819 S.W.2d at 929; Bell v. State, 768 S.W.2d 790, 801 (Tex.
App.—Houston [14th Dist.] 1989, pet. ref’d); accord Fex, 507 U.S. at 52 (court “that lodged the detainer against”
the prisoner); see IADA, 18 U.S.C.
app. § 4 (court “in which indictments, informations, or complaints, for
which disposition is sought, are pending”).

      Relator
failed to cause his notice and request to be delivered to Respondent.  Relator’s notice titled Place of Imprisonment
was directed as follows:


 
 
 To:
 Prosecuting Officer
     Bill J. Moore
 
 
 Jurisdiction
 Johnson
 County, TX
 
 
 
 
     Court
     County Court
 
 
 Jurisdiction
 Johnson
 County, TX
 
 


And
to all other prosecuting officers and courts of jurisdiction listed below from
which indictments, informations, or complaints are pending
. . . .

(Pet. App. at [5]); see IADA, 18 U.S.C. app. § 2, art. III(a); see also Tex. Code Crim. Proc. Ann. Art. 51.14, art. III(a).  No other prosecuting officer, court, or
jurisdiction is listed.  (Cf. Pet. App. at [5].)  Certified mail return receipts show
something, although the record does not show what, mailed to “Clerk of Court, Johnson County” and received by the same person who received the mailings to Real
Party in Interest.[9]  (Id. at [9]-[10].) 
The record does not show that Relator caused a request for final
disposition or notice of his place of imprisonment to be delivered to
Respondent, and thus does not show that Relator invoked the IADA.  Accordingly, Relator has no right to relief
under the IADA.

II.   B.   1.    c.    Relator is not entitled to relief under the
IADA because he did not make a timely request for trial under the IADA.

      A
prisoner is not entitled to relief where he or she fails to make a timely
request for trial in the trial court within the period established by the IADA,
whether 180 days under Article III or 120 days under Article IV.  See
Reed v. Farley, 512 U.S. 339, 348-49 (1994) (habeas corpus); see Sanchez, 918 S.W.2d at 527 (same).

      The
record before us does not show that Relator made a request for trial, much less
a timely request, under the IADA.[10] 
Accordingly, Relator does not show that he has a right to relief under
the IADA.

II.   B.   2.    Relator fails to demonstrate that he has no
legal remedy.

      The
other great requirement for mandamus relief is that a court may issue a writ of
mandamus only if the relator demonstrates that he or she has “no adequate legal
remedy.”  De Leon, 127 S.W.3d at 5; accord Winters, 118 S.W.3d at 775. 
“That a party must have ‘no other adequate remedy by law’ is a
‘fundamental tenet’ of mandamus practice.” 
In re State Bar, 113 S.W.3d
730, 734 (Tex. 2003) (orig. proceeding) (quoting Walker, 827 S.W.2d at 839); accord In re D.A.S., 973 S.W.2d 296, 300 (Tex. 1998) (orig. proceeding) (juvenile
delinquency).  A relator “cannot satisfy
the inadequate legal remedy requirement merely by showing that he will be
greatly inconvenienced by getting the . . . question decided through the
normal appellate process.”  De Leon at 6.  “It
is a clear abuse of discretion for a court of appeals to grant mandamus relief
to an aggrieved party with an adequate remedy at law.”  Woodard
v. Eighth Court of Appeals, 991 S.W.2d 795, 796 (Tex. Crim. App. 1998)
(orig. proceeding).

      Here,
Relator has an adequate legal remedy short of a writ of mandamus.

II.   B.   2.    a.    Relator may file a motion to set aside any
information.

      The
Texas Court of Criminal Appeals has held that a relator seeking pretrial
dismissal of a charging instrument “has an adequate remedy at law and,
therefore, has no need for the drastic remedy of mandamus.”  Smith, 962
S.W.2d at 592 (citing United States v.
MacDonald, 435 U.S. 850, 860-61 (1978)) (VIth Amend. speedy trial);
accord Thomas v. Stevenson, 561
S.W.2d 845, 847 n.1 (Tex. Crim. App. 1978) (orig. proceeding); Pope v. Ferguson, 445 S.W.2d 950, 955-56
(Tex. 1969) (orig. proceeding).  That remedy is that a relator “could file a
motion to set aside the” charging instrument “in the trial court, pursuant to
Article 27.03 of the Texas Code of Criminal Procedure, and if the trial court
erroneously denied the motion, . . . could appeal from any conviction
that resulted from the continued prosecution.” 
Smith, 962 S.W.2d at 592
(citing Pope at 955-56); see Tex.
Code Crim. Proc. Ann. Art. 27.03 (Vernon 1989); but
see Engle v. Coker, 820 S.W.2d 247, 250-51 (Tex. App.—Beaumont 1991, orig.
proceeding) (distinguishing Tex. IADA from former Speedy Trial Act).  “The remedy for violations of” the IAD “is a
bar on prosecution.”  Smith v. State, 70 S.W.3d 848, 853 (Tex. Crim. App. 2002).  Thus, Relator has an adequate remedy by
appeal from any denial of a motion under the IADA.  Accordingly, we should deny his petition.

II.   B.   2.    b.    On the majority’s analysis, Relator has
adequate remedies at law.

      Two
other remedies are conditioned on the majority’s incorrect analysis of the
case.  The majority states that “[t]he
State” “responded” to Relator’s petition

with copies of a motion and order dismissing the trial court case,
No. M200300270, styled The State of Texas v. Charles Larry Ryan.  The response-letter states that the dismissal
is “in accordance with Title 18, United States Code, Appendix 2, Interstate
Agreement on Detainers.”  The
accompanying order is, however, “without prejudice.”

(Slip op. at [1].)  The majority thus errs in considering the
State’s correspondence as a response to the petition, and, further, in
considering material not before Respondent at the time that Relator contends
Respondent abused his discretion.

      On July 14,
 2004, the Court
requested a response to the petition.  See Tex.
R. App. P. 52.4.  On July 23,
 2004, the Clerk
received a letter from Real Party in Interest. 
(Letter from Asst.
 Johnson County Att’y to Clerk of 7/20/2004.)  The
letter states: “Enclosed is a copy of the Motion to Dismiss and Judge William
Anderson’s Order of Dismissal in Johnson County Cause No. M200300270, styled:
The State of Texas v. Charles Larry Ryan. 
This charge was dismissed in accordance with Title 18 United States
Code, Appendix 2, Interstate Agreement on Detainers.”  (Id.) 
Attached to the letter is what purports to be a copy of a boiler-plate
motion to dismiss and order on the motion. 
(Id. attachment.) 
The motion and order purport to be filed in Cause No. M200300270, styled
The State of Texas v. Charles Larry Ryan,
in the County Court at Law Number 2 of Johnson County, Texas.  (Id.)  The
purported Motion to Dismiss states, in relevant part:

      NOW COMES the State of Texas by and through her County Attorney, and respectfully requests the Court to dismiss
the above entitled and numbered criminal action in which the defendant is
charged with the offense of  DRIVING
WHILE   INTOXICATED , for the reason:

      . . .

Other;  TITLE
18 UNITED STATES CODE, APPENDIX 2, INTER- 
 STATE AGREEMENT ON DETAINERS_______________________ 

      WHEREFORE, the County Attorney prays that the above entitled and numbered
criminal action be dismissed without prejudice.

(Id. (typewritten insertions underlined).)  The purported boiler-plate Order at the
bottom of the motion states:

      The foregoing Motion to
Dismiss having been presented to me on this the  20  [sic] day of  July ,  2004 ,
and the same having been considered, it is therefore ORDERED, ADJUDGED AND
DECREED that said above entitled and numbered criminal action be and the same
is hereby dismissed without prejudice.

(Id. (handwritten insertions italicized).)  The Order purports to be signed by
Respondent.  (Id.)

      The
Clerk has not filed this correspondence, but has either treated it, as it is,
as mere correspondence; or has treated it as defective.  See
10th Tex. App. (Waco) Loc. R. 5. 
The majority treats the State’s correspondence as a “response-letter,”
(slip op. at [1]), a term unknown to the Rules of Appellate Procedure, cf. Tex.
R. App. P.  For the same reasons
for which we should disregard Relator’s unverified statements and uncertified
and unsworn exhibits, we should disregard Real Party in Interest’s.  See
supra Part II.A.1.b.-c.; Tex. R. App. P. 52.4 (response to
conform to requirements for petition); id.
52.3(j)(1)(A), 52.7(a) (Appendix and record requirements for petition); Schroeder v. Valdez, 941 S.W.2d 312, 314
(Tex. App.—Corpus Christi 1997, orig. proceeding).

      The
majority errs in considering matters not before Respondent when he took the action
by which Relator contends that Respondent abused his discretion.  In determining whether a writ of mandamus
should issue, a court “must focus on the record that was before the [trial]
court” when the trial court made its decision. 
In re Bristol-Myers Squibb Co., 975
S.W.2d 601, 605 (Tex. 1998) (orig. proceeding); accord In re Cont’l Ins. Co., 994 S.W.2d 423, 423 (Tex. App.—Waco, orig. proceeding), mand. conditionally granted on other grounds sub nom. In re Union Pac.
Res. Co., 22 S.W.3d 338 (Tex. 1999) (orig. proceeding) (per curiam); In re Taylor, 113 S.W.3d 385, 392 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding)
(exhibits).  In Relator’s petition, dated
June
 15, 2004, he contends
that Respondent did not rule on Relator’s motion to dismiss, which Relator
contends he filed on March 10, 2004.  (Pet.
at 3, 4.)  The majority thus finds an
abuse of discretion in a purported order that, under the majority’s analysis,
Respondent signed on July 20, 2004, after Relator filed his petition.  (See
slip op.)

      Considering
the State’s correspondence as a response, however, and crediting the purported
motion and order, Relator still would have adequate remedies short of a writ of
mandamus, and thus would not be eligible for a writ.

II.   B.   2.    b.    i.    Relator may move for judgment nunc pro tunc.

      First,
Relator may have an adequate remedy by an order nunc pro tunc.  See generally Tex. R. App. P. 23. 
“[T]he proper mode of correction” of “an inaccurate criminal judgment”
is “a nunc pro tunc motion and order.”  Ex parte Pena, 71 S.W.3d 336, 337 n.5
(Tex. Crim. App. 2002); accord Ex parte
Madding, 70 S.W.3d 131, 135 n.8 (Tex. Crim. App. 2002); State v. Bates, 889 S.W.2d 309, 309
(Tex. Crim. App. 1994); see Ex parte
Evans, 964 S.W.2d 643, 645 n.2 (Tex. Crim. App. 1998) (jail time credit)
(“preferred practice”); State v. Ross, 953
S.W.2d 748, 751-52 (Tex. Crim. App. 1997) (deadly weapon finding).  “A judgment nunc pro tunc, which literally
means ‘now for then,’ . . . may be used only to correct clerical
errors in which no judicial reasoning contributed to their entry, and for some
reason were not entered of record at the proper time.”  Bates at
309; accord Pena at 337 n.5.

      If
Respondent’s signing an order of dismissal “without prejudice” when presented
with a motion to dismiss under the IADA was a clerical error, then Relator may
seek correction of the order by a motion for judgment nunc pro tunc.

II.   B.   2.    b.    ii.    Relator may give notice of appeal.

      Moreover,
Relator would have a remedy by direct appeal of the order.  “[M]andamus is not a substitute for appeal
. . . .”  Hill, 34 S.W.3d at 928 n.5 (citing State ex rel. Healey v. McMeans, 884
S.W.2d 772, 774 (Tex. Crim. App. 1994) (orig. proceeding)).

      A
criminal defendant has a general right of appeal.  See
Tex. Code Crim. Proc. Ann. Art.
44.02 (Vernon 1979). 
An order of dismissal is a final, appealable order.  State
v. Moreno, 807 S.W.2d 327, 334 (Tex. Crim. App. 1991)
(State’s appeal); Lozano v. State, 978
S.W.2d 645, 648 (Tex. App.—Eastland 1998, no pet.) (criminal bond forfeiture).  If the order is erroneous, then direct appeal
lies from the order.

      Accordingly,
the majority errs in granting the writ of mandamus.

CONCLUSION

      For
these reasons, we should strike or dismiss Relator’s Petition for Expeditious
Mandamus, or, in the alternative, deny it. 
Because the majority conditionally grants it, I respectfully dissent.

TOM
GRAY

Chief Justice

Dissenting opinion delivered and filed October
 20, 2004

Publish











[1]  Contrary to the majority’s statement, (cf. In re Ryan, No. 10-04-00128-CR, slip
op. at [1] (Tex. App.—Waco Oct. 20, 2004, orig. proceeding [no
mand. h.]) (majority op.) (not designated for publication)), the State of Texas
is not both respondent and real party in interest, cf. Tex. R. App. P.
3.1(h), 52.2.  Relator does not seek “to
compel the State to comply with the Interstate Agreement on Detainers,” (cf. slip op. at [1]); or, if he does,
the Court lacks jurisdiction to issue the writ. 
The Court, indeed, lacks jurisdiction to issue the writ against the
State, except perhaps where necessary to enforce the Court’s jurisdiction.  Cf. Tex. Gov’t Code Ann. § 22.221(a)-(b)
(Vernon 2004).  Mandamus “jurisdiction
does not extend to governmental bodies, as opposed to government
officials.”  See A & T Consultants, Inc. v. Sharp, 904 S.W.2d 668,
686 (Tex. 1995) (orig.
proceeding) (Hecht, J., dissenting) (Supreme Court jurisdiction).

   Judge Anderson is Respondent, the person or party “against whom
relief is sought.”  Tex. R. App. P. 3.1(h)(2), 52.2.  Relator’s petition is styled, “Charles L.
Ryan, Petitioner, vs. Honorable Bill Anderson, Johnson County Court at Law #2, Cleburne,
 Texas, Respondent.”  (Pet. at [1].)  In the petition, Relator moves for “an order
of mandamus compelling Judge Bill Anderson, County Court at Law #2, Cleburne,
Tx. to dismiss with prejudice Warrant # M200300270.”  (Id. at 4.)  The State of Texas,
by and through Bill Moore, County Attorney
of Johnson County,
is Real Party in Interest, a “person whose interest would be directly affected
by the relief sought.”  Tex. R. App. P. 52.2.





[2]  When I refer to the Interstate Agreement on
Detainers Act or IADA without qualification, I refer to the federal Act.  See
IADA, 18 U.S.C. app. § 1 (2000).





[3]  I refer to Articles of the Texas Code of
Criminal Procedure as Articles (capitalized), and articles of the Texas IADA as
articles (not capitalized).





[4]  The Texas Court of Criminal Appeals “look[s]
to the Supreme Court of Texas for guidance in” mandamus law.  Perkins
v. Court of Appeals, 738 S.W.2d 276, 285 (Tex. Crim. App. 1987) (orig.
proceeding).





[5]  Besides the failings stated below, Relator
also fails to comply with Rule of Appellate Procedure 52.7, which provides,
“Relator must file with the petition . . . a properly authenticated
transcript of any relevant testimony from any underlying proceeding, including
any exhibits offered in evidence, or a statement that no testimony was adduced
in connection with the matter complained [sic].”  See
Tex. R. App. P. 52.7(a),
(a)(2).  I overlook this failure; since
the record does not show that Relator presented his request to Respondent, it
would not be likely that Respondent heard testimony or received evidence on the
matter.  I note, however: 

In ruling on a motion to dismiss
with prejudice based on alleged violations of the [Interstate] Agreement [on
Detainers], it is proper for the trial court to hold a pretrial evidentiary
hearing to determine whether a detainer was filed against the defendant and, if
a detainer was filed, to determine whether the provisions of the Agreement were
violated.

State v. Williams, 573 N.W.2d 106, 110 (Neb.
1997).





[6]  The IADA provides in Article IV:

       The appropriate officer of the
jurisdiction in which an untried indictment, information, or complaint is
pending shall be entitled to have a prisoner against whom he has lodged a
detainer and who is serving a term of imprisonment in any party State made
available in accordance with article V(a) hereof upon presentation of a written
request for temporary custody or availability to the appropriate authorities of
the State in which the prisoner is incarcerated . . . .

IADA, 18
U.S.C. app. § 2, art. IV(a); see Tex. Code Crim. Proc. Ann. Art. 51.14,
art. IV(a).  Article IV generally
provides that “trial shall be commenced within one hundred and twenty days of
the arrival of the prisoner in the receiving state.”  IADA, 18 U.S.C. app. § 2, art. IV(c); see Tex.
Code Crim. Proc. Ann. Art. 51.14, art. IV(c).  Article V provides, “At the earliest
practicable time consonant with the purposes of this agreement, the prisoner
shall be returned to the sending State.” 
IADA, 18 U.S.C. app. § 2, art. V(e); see Tex. Code Crim. Proc.
Ann. Art. 51.14, art. V(e).  Under
the IADA, then, “If trial is not had on any indictment, information, or
complaint contemplated hereby prior to the prisoner’s being returned to the
original place of imprisonment pursuant to article V(e) hereof, such
indictment, information, or complaint shall not be of any further force or
effect, and the court shall enter an order dismissing the same with prejudice.”  IADA, 18 U.S.C. app. § 2, art. IV(e); see Tex.
Code Crim. Proc. Ann. Art. 51.14, art. IV(e).





[7]  Thus, prosecutors know that they should not
request that a detainer be lodged until they are ready to try their case: “In
part because of the quick time limits involved and consequences of violating
them, it is critical that a formal detainer never be lodged against an inmate
incarcerated in another state unless potential effects of the IAD’s
requirements have been evaluated.”  Steve Chalender, Tex. Dist. & County Att’ys Ass’n, Extradition 54 (Diane Burch
Beckham ed., 2004).





[8]  Relator’s petition states, “On July 15, 2003 the Johnson County
Sheriffs Office in Cleburne, Texas
lodged a detainer against petitioner at Oxford FCI charging – DWI Warrant #
M200300270” [sic].  (Pet. at 2.)  For the reasons stated above, we should not
consider the unverified factual statements in Relator’s petition.  See
supra Part II.A.1.c.

   Moreover, were I to consider the purported program staff reviews
attached as an exhibit to the petition, those reviews would further tend not to
support Relator’s argument.  (Cf. Pet. Ex. C.)  That exhibit purports to contain reviews of
Relator’s participation in a residential drug abuse treatment program by drug
treatment specialists at the institution where he is imprisoned.  See
18 U.S.C. § 3621(e)(5)(A) (2000) (defining “residential substance abuse
treatment”).  In the purported review
dated April 16, 2004,
wherever the typed word “detainer” appears, the word is crossed out and
“WARRANT” is interlineated in manuscript, apparently in Relator’s
handwriting.  (See Pet. Ex. C at [1]).





[9]  Besides its constitutional County Court, Johnson
 County has two statutory county
courts, namely “County Court at Law No. 1” and Respondent’s “County Court at
Law No. 2”; and two district courts.  See Tex.
Const. art. V, § 15; Tex.
Gov’t Code Ann. § 25.1281 (Vernon 2004); id. §§ 24.119, 24.557 (Vernon 2004).





[10] Even were I to take Relator’s unverified
factual statements as true, as we should not, they would defeat his claim.  Relator contends that his “IADA Request” was
delivered to Real Party in Interest on July
 21, 2003.  (Pet. at 3.)  Relator contends that he filed a motion to
dismiss with Respondent on March 10,
 2004.  (Id.)  Assuming that an indictment or information
was pending in Respondent’s court, in order for Relator to invoke the 180-day
requirement of IADA Article III, it was necessary that Relator—within 180 days
of delivery of Relator’s request for disposition to Respondent—request that
Respondent set Relator’s case for trial within the 180-day period.  By Relator’s petition, he failed to do so by
some 53 days.  (Cf. id.)  Accordingly,
Relator would not have a right to relief under the IADA.