The STATE of Texas, Appellant,

v.

Lorman Tyrone MILES, Appellee.

No. 05–02–01407–CR.

Court of Appeals of Texas,
Dallas.

March 31, 2003.

Stephanie Michelle Duecker, Richardson, for Appellee.

Tom O'Connell, Crim. Dist. Atty., M. Emily Johnson–Liu and April Steele, Asst. Crim. Dist. Attys., McKinney, for Appellant.

Before Justices JAMES, FITZGERALD, and LANG.

## OPINION

Opinion by Justice LANG.

Lorman Tyrone Miles, appellee, was charged by information May 3, 2000, in Collin County with the offense of theft. Appellee filed a *pro se* Motion to Dismiss or in the Alternative Request for Fast and Speedy Trial on November 1, 2001, and his court appointed attorney filed a Motion to Set Aside Information for Failure to Afford Constitutional Right to Speedy Trial and a Motion for Speedy Trial on November 12, 2001. By order dated August 26, 2002, the trial court dismissed the case based upon the State's failure to comply with the Interstate Agreement on Detainers Act (the "IADA").[1] The State of Texas filed this appeal raising two issues for review. The State claims the trial court erred in granting appellee's motion to dismiss pursuant to the IADA because: 1) the 180 day time period to bring appellee to trial was not triggered; and 2) no Collin County detainer was ever lodged against appellee. For the reasons that follow, we sustain the State's second issue presented for review. Because our decision respecting that issue is dispositive, we need not address the first issue. We reverse the trial court's order dismissing the case and remand the cause for further proceedings.

## Factual and Procedural Background

On February 21, 2000, Appellee was arrested in Plano, Collin County, for theft of a drill worth between $50 and $500. February 22, 2000, a Collin County magistrate determined that there was probable cause for appellee's continued detention. The Magistrate's Warning and Order of Commitment, also dated February 22, 2000, indicated that the United States Marshal (U.S.Marshal) had a "hold" on appellee for escape from a halfway house. Also on February 22, 2000, the Collin County Sheriff's Department telecopied to the U.S. Marshal's office a one page Detainer for Prisoner form which listed the outstanding Collin County theft charge as well as three other charges from the City of Benbrook's police department. This one page form ("County Letter") shows a check mark next to the statement, "Subject is to be returned to this department when ready for release by your department." On May 3, 2000, the State charged appellee by information with theft.

On August 14, 2000, appellee was committed to the Federal Correctional Complex in Beaumont, Texas. On August 25, 2000, the Federal Bureau of Prisons sent the Collin County Sheriff's office a one page form letter entitled "Detainer Action Letter" ("Federal Letter"). In the Federal Letter were several statements listed with boxes next to each where check marks could be placed to indicate applicability. The box next to the following statement was checked:

I am returning *the attached form* on the above named inmate who was committed to this institution on *8–14–2000* to serve *12 months and 1 day* for the offense of *Escape from a Halfway House Facility.* If you wish *the at-*

---

1. Tex.Code Crim. Proc. Ann. art. 51.14 (Vernon Supp.2003).

*tached memo* filed as a detainer, please return a certified copy of the warrant along with a cover letter stating your desire to have it placed as a hold or indicate you have no further interest in the subject. [Italics supplied for words typed into blanks in the form.]

This Federal Letter identified appellee as its subject. The "attached memo" was a copy of the Collin County Detainer form, the County Letter, which had been telecopied to the U.S. Marshal and dated February 22, 2000.

On November 1, 2001, appellee filed a *pro se* Motion to Dismiss or in the Alternative Request for Fast and Speedy Trial. In his motion, appellee states that the pending case in Collin County is negatively affecting his custody classification in the federal facility in Beaumont. He requests that if the charges are not dismissed altogether, he be given a speedy trial as guaranteed by the Sixth Amendment to the Constitution. Further, he claims in his *pro se* motion that the Texas Code of Criminal Procedure requires that a defendant be tried within 180 days after notice is given and a defendant's speedy trial rights are invoked. This motion referenced the pending Collin County case and was sent by regular mail on October 24, 2001 to the District Clerk of Collin County. Appellee does not claim he ever mailed a copy to the district attorney. The district attorney claims he did not receive a copy of the motion from appellee.

On November 6, 2001, an attorney was appointed by the court to represent appellee, and on November 12, 2001, she filed two motions on his behalf: 1) Motion to Set Aside Information for Failure to Afford Constitutional Right to Speedy Trial; and 2) Motion for Speedy Trial. In these motions, counsel asserted appellee's right to a speedy trial pursuant to both the state and federal constitutions, and articles 1.03,

1.04, and 1.05 of the Texas Code of Criminal Procedure. There was no reference to the IADA, the appellee's *pro se* motion, or the fact that appellee was in federal custody.

On August 22, 2002, at the beginning of the hearing respecting the motions filed by counsel for appellee on November 12, 2001, counsel for appellee orally amended her motions to include a request that the case against appellee be dismissed under article 51.14 of the code of criminal procedure, the IADA. Appellee's counsel also requested that the court take judicial notice of the contents of the court's file, including the Federal Letter, the one page form "Detainer Action Letter" from the Federal Bureau of Prisons. The record reflects that the court discussed the requirement, under the IADA, that notice be given to the prosecuting attorney. On the record, and apparently in response to the court's comments, appellee's counsel requested that the court take judicial notice that she, the court, and the previous attorney representing the State, had discussions at a prior hearing regarding appellee's request for a speedy trial and regarding who would be responsible for arranging appellee's transfer from federal custody. The State objected and argued that the hearing was "moot" because appellee had not complied with the requirements of the IADA. At the close of the hearing, the court took all matters under advisement.

In an order dated August 26, 2002, the court dismissed the theft charge. The court's findings of fact supporting the dismissal stated that appellee's *pro se* motion was mailed to the court clerk on October 24, 2001 and filed on November 1, 2001. In connection with the filing, appellee filed the Federal Letter from the Federal Bureau of Prisons. The Federal Letter was sent in response to the County Letter, which requested that a detainer be placed

on appellee. Also, the court found in its order that in November 2001, the Collin County assistant district attorney had notice that appellee was being held in the Federal Correctional Complex in Beaumont and that appellee was demanding a speedy trial. Further, the trial court found that any deficiencies in the Federal Letter were the fault of the United States government and would not be held against appellee. Finally, the court found that

> the requirement of Art. 51.14 C.C.P. which require[s] that the prosecuting attorney and the court be notified by registered or certified mail of the defendant's request for a speedy disposition of his case is designed to ensure that the prosecutor and the court both receive timely notice of the defendant's request.

The court reasoned that since neither the court nor the State denied that they received actual notice of appellee's request, the requirement that the notice be served by certified or registered mail "will not be held against the defendant."

### Applicable Law

#### 1. Interstate Agreement on Detainers Act

█ The IADA is a congressionally sanctioned compact between the United States and the states and is subject to federal construction. *Birdwell v. Skeen*, 983 F.2d 1332, 1336 (5th Cir.1993); *Espinoza v. State*, 949 S.W.2d 10, 11 (Tex.App.-San Antonio 1997, pet. ref'd) (citing *Cuyler v. Adams*, 449 U.S. 433, 442, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981)). This agreement allows prosecutors in one jurisdiction to acquire the presence of defendants imprisoned in other jurisdictions for trial prior to the expiration of their sentences. TEX. CODE CRIM. PROC. ANN. art. 51.14 (Vernon Supp.2003). After the prosecutor places a detainer on a prisoner, that prisoner may

request speedy disposition of the charges under article III of the IADA. Once notified of the prisoner's request, the prosecutor has 180 days to bring the prisoner to trial. If the prosecutor exceeds those 180 days, the charges are dismissed with prejudice and the detainer becomes invalid. *Birdwell*, 983 F.2d at 1336; IADA art. III, V, TEX.CODE CRIM. PROC. ANN. art. 51.14 (Vernon Supp.2003).

█ The decision to grant a defendant's motion to dismiss respecting an untried indictment, information, or complaint under the IADA is a question of law reviewed *de novo*, and the factual findings underlying that decision are reviewed under a clearly erroneous standard. *State v. Sephus*, 32 S.W.3d 369, 372 (Tex.App.-Waco 2000, pet. ref'd) (citing *United States v. Hall*, 974 F.2d 1201, 1204 (9th Cir. 1992)).

#### 2. Detainer Must be Lodged Against Prisoner

█ The provisions of article III apply only when a "detainer" has first been "lodged against the prisoner" with the custodial jurisdiction. Art. III(a), TEX.CODE CRIM. PROC. ANN. art.51.14 (Vernon Supp. 2003); *see United States v. Mauro*, 436 U.S. 340, 343, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *Espinoza*, 949 S.W.2d at 13. There is no definition of "detainer" in the IADA. However, the United States Supreme Court has described a "detainer" as "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." *Fex v. Michigan*, 507 U.S. 43, 44, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993).

█ How one determines whether a detainer is to be deemed lodged is not defined by the IADA. However, Texas case law holds that a detainer is lodged when

the "detainer" is "filed" with the custodial institution. *See Ex parte Bynum*, 772 S.W.2d 113, 115 (Tex.Crim.App.1989).

■ Article III applies only when a "person has entered upon a term of imprisonment in a penal or correctional institution of a party state."[2] As a New York appellate court found, a detainer cannot be lodged against a prisoner within the meaning of the IADA, when the prisoner was not actually in the custody of the criminal justice agency to which the detainer notice was directed. *People v. Reilly*, 136 A.D.2d 355, 527 N.Y.S.2d 234, 240 (N.Y.App.Div. 1988), app. denied 72 N.Y.2d 865, 532 N.Y.S.2d 515, 528 N.E.2d 905.

### Application of Law to Facts

■ The record reflects that appellee was arrested February 21, 2000. The Magistrate's Warning and Order of Commitment dated February 22, 2000, directed that appellee be held in the Collin County jail. The Order of Commitment also lists the pending charges as well as a "hold" from the U.S. Marshal because of an escape charge. Nothing in the record before us indicates when appellee was transferred by Collin County to federal custody. However, the Federal Letter, which was sent to the Collin County sheriff and dated August 25, 2000, states that appellee was committed to the Federal Correctional Complex in Beaumont on August 14, 2000.

Appellee invites us to treat the Collin County Letter as an "informal" detainer, arguing that we should follow the precedent of this Court in *Burton v. State*, 805 S.W.2d 564, 575 (Tex.App.-Dallas 1991, pet. ref'd). In *Burton*, Texas officials sent a letter to Nevada officials asking that they detain Burton because of the pending Texas charges. The letter was not a "for-mal detainer" under the IADA. *Id.* However, this Court held an "informal" hold letter, which did not expressly refer to the IADA, was sufficient as a detainer.

In *Burton*, there was no issue respecting whether the defendant was in the custody of the recipient of the informal hold letter. The lodging of the detainer was clear in *Burton* because that defendant was in the custody of Nevada authorities. Obviously, in the case at bar, the record shows appellee was in the custody of Collin County, the sender of the County Letter. The holding in *Burton* is inapposite.

We conclude that on February 22, 2000, according to the record, appellee was incarcerated in Collin County under the sheriff's supervision. As we have noted above, under the IADA, a detainer is "a request to a criminal justice agency in which the prisoner is incarcerated." *Fex*, 507 U.S. at 44, 113 S.Ct. 1085. Since appellee was not incarcerated by the federal authorities on February 22, 2000, when the County Letter was sent, the County Letter was premature. It was not a "detainer."

Further, the Federal Letter was not a detainer because it was a letter from the criminal justice agency where the prisoner was then incarcerated, to Collin County. The Federal Letter was no more than an inquiry by the custodial agency as to whether Collin County wanted to file a detainer against appellee. The record before us reveals no response from Collin County to the Federal Letter. Neither the County Letter nor the Federal Letter could serve to lodge a detainer because the sender in each case was the custodial agency at the time each letter was sent. Hence, the IADA was not invoked. *See Reilly*, 527 N.Y.S.2d at 240.

---

**2.** A party state within the meaning of the statute includes the United States. IADA art. II(a), TEX.CODE CRIM. PROC. ANN. art. 51.14 (Vernon Supp.2003).

## Conclusion

We conclude that the holding of the trial court is clearly erroneous. Under the law, no detainer was lodged by Collin County law enforcement authorities against appellee. Only the lodging of a detainer will invoke the IADA. Even if the prisoner had sent a notice to the State and the court which was strictly in accordance with the IADA, such a notice, by itself, cannot invoke the IADA's speedy trial requirements. We sustain the State's second issue, which is dispositive. Accordingly, we need not address the State's first issue. We reverse the trial court's Order Dismissing Case and remand the cause for further proceedings.