NO. 07-09-0063-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 26, 2009
______________________________

EX PARTE LEVI ALEXAS KING
_________________________________

FROM THE 31ST DISTRICT COURT OF GRAY COUNTY;

NO. 7202, 7203 AND 7924; HONORABLE STEVEN R. EMMERT, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
OPINION
          Appellant Levi Alexas King is charged by three indictments with capital murder. The
State obtained his return to Texas from incarceration in Missouri. Contending he was
denied a speedy trial under article IV of the Interstate Agreement on Detainers Act (IADA),



appellant sought dismissal of the indictments by pre-trial writ of habeas corpus in the trial
court. The trial court denied relief and appellant appeals. We will affirm.
 
 
Background
          In 2005, appellant was arrested in El Paso on a felony warrant from Missouri and
transported to that state by its officers. Gray County, Texas, subsequently charged
appellant with capital murder through three indictments. The Sheriff of Gray County
submitted a warrant for the arrest of appellant to the Missouri Department of Corrections. 
By letter, that agency acknowledged a detainer


 was placed on appellant. Appellant was
tried on the Missouri charges, and on April 18, 2008, sentenced there to two consecutive
life sentences without parole. By documents transmitted May 9, 2008, to the Governor of
Missouri, the Governor of Texas demanded the rendition and arrest of appellant for return
to Texas. In response, Missouri officials delivered appellant to Texas authorities. He
arrived in Texas in the custody of the Hemphill County Sheriff on July 11, 2008. The trial
court issued a scheduling order on August 12 setting appellant’s case for trial on January
19, 2009. 
          Appellant filed a motion on September 10, 2008, requesting a speedy trial according
to article 51.14, article IV(c). He subsequently sought release from the indictments by pre-trial writ of habeas corpus alleging he was denied a speedy trial as required by article
51.14, article IV(c).


 Following a February 17 hearing, the trial court denied the requested
relief. This appeal followed. 
Discussion
          Through one issue appellant contends that because the trial court did not
commence his trial within 120 days of his arrival in Texas, as required by the IADA, it erred
by failing to dismiss the pending indictments with prejudice. The State counters that
appellant was not returned to Texas under the IADA but was extradited according to the
Uniform Criminal Extradition Act (UCEA)


 which contains no speedy trial provision.
          The facts in this case are not in dispute. Rather, the parties disagree over the
application of law to those facts. We review de novo the trial court’s resolution of questions
turning on the application of legal standards. Ex parte Peterson, 117 S.W.3d 804, 819
(Tex.Crim.App. 2003) (per curiam), overruled in part on other grounds by Ex parte Lewis,
219 S.W.3d 335, 371 (Tex.Crim.App. 2007).
          The IADA “is a compact entered into by 48 States, the United States, and the
District of Columbia to establish procedures for resolution of one State's outstanding
charges against a prisoner of another State.” New York v. Hill, 528 U.S. 110, 111, 120
S.Ct. 659, 662, 145 L.Ed.2d 560 (2000); see Historical and Statutory Notes, Tex. Code
Crim. Proc. Ann. art. 51.14 (Vernon 2006). The party states include both Texas and
Missouri.


 Article I of the IADA, reciting that “charges outstanding against a prisoner,
detainers based on untried indictments, informations, or complaints, and difficulties in
securing speedy trial of persons already incarcerated in other jurisdictions, produce
uncertainties which obstruct programs of prisoner treatment and rehabilitation,” declares
“it is the policy of the party states and the purpose of [IADA] to encourage the expeditious
and orderly disposition of such charges and determination of the proper status of . . .
detainers based on untried indictments, informations, or complaints.” Tex. Code Crim.
Proc. Ann. art. 51.14, art. I (Vernon 2006).
          The older UCEA also “establishes procedures for the interstate transfer of persons
against whom criminal charges are outstanding.” Cuyler v. Adams, 449 U.S. 433, 436 n.1,
101 S.Ct. 703, 705 n.1, 66 L.Ed.2d 641 (1981); see State v. Davis, 210 S.W.3d 229, 236
(Mo.App. W.D.2006) (IADA not exclusive means of obtaining return of a prisoner);
Commonwealth v. Wilson, 504 N.E.2d 1060, 1064 (Mass. 1987) (same). Following the
language of the Extradition Clause of the United States Constitution,


 the UCEA speaks
in terms of a demand by the executive of a state placed on the executive of another state
for delivery of a fugitive from justice. Within the bounds of the constitution and applicable
law, the UCEA requires the governor of a sending state to have a fugitive


 arrested and
delivered to the executive authority of the receiving state. Tex. Code Crim. Proc. Ann. art.
51.13, § 2 (Vernon 2006). The IADA applies to persons serving a term of imprisonment;
the UCEA applies both to incarcerated individuals


 and those at liberty. 
          As article I of the IADA suggests, its provisions are activated by the lodging of a
detainer by a party state on a pending indictment, information or complaint against a
prisoner incarcerated in another state. A detainer is lodged when it is “filed” with the
custodial institution. State v. Miles, 101 S.W.3d 180, 183-84 (Tex.App.–Dallas 2003, no
pet.) (citing Ex parte Bynum, 772 S.W.2d 113, 115 (Tex.Crim.App. 1989)). When a
detainer is lodged, the prisoner can take steps, set forth in IADA’s article III, to cause the
indictment, information or complaint on which the detainer was based to be speedily
resolved. Tex. Code Crim. Proc. Ann. art. 51.14, art. III (Vernon 2006). This appeal does
not involve the provisions of article III. 
          By following procedures set forth in article IV of IADA, the “appropriate officer” of 
the jurisdiction in which an indictment, information or complaint is pending is entitled to
have the prisoner against whom the officer has lodged a detainer “made available” for
prosecution. Article V further provides that in response to a request made under article IV,
the state having custody of the prisoner shall offer to deliver temporary custody of the
prisoner for “speedy and efficient prosecution” of the pending charge. Tex. Code Crim.
Proc. Ann. art. 51.14, art. V(a) (Vernon 2006). 
          The procedure set forth in article IV(a) requires, inter alia, presentation to the
sending state of a written request for temporary custody “approved, recorded, and
transmitted” by the court having jurisdiction of a charge pending against the prisoner. Art.
51.14, art. IV(a). Once the prisoner arrives in the receiving state, trial must commence
within 120 days unless continued by the trial court for “good cause.” Art. 51.14, art. IV(c). 
The IADA thus enables a party state “to obtain custody of an out-of-state prisoner for
prosecution, and in exchange, imposes some duties upon that state to ensure that the
prisoner is quickly returned. This arrangement is thus contractual in nature, and the
prosecuting authorities submit to this contract when they obtain a prisoner through the
IADA.” State v. Williams, 938 S.W.2d 456, 460 (Tex.Crim.App. 1997). The consequence
of failure to begin trial within the 120-day period is dismissal of the indictment with
prejudice. Art. 51.14, art. V(c).
          Here, the State does not dispute that a detainer was lodged against appellant.
Undisputed evidence admitted at the habeas writ hearing also documents the procedure
by which appellant was returned to Texas. The record contains a written request from the
District Attorney of Gray County to the extradition coordinator for the office of the Governor
of Texas. The governor’s demand for rendition and arrest of appellant, along with
documentation citing the Extradition Clause and article 51.13 as authority for appellant’s
return to Texas, were forwarded by the office of the Governor of Texas to the office of the
Governor of Missouri. The record does not contain evidence of compliance with the IADA’s
requirements with respect to appellant’s transfer. Most significantly, nothing in the record
indicates the trial court “approved, recorded, and transmitted” a written request for
temporary custody of appellant in Texas, as is required by the IADA. 
          Nonetheless, appellant contends that even if his return to Texas was accomplished
according to the UCEA, the IADA’s 120-day speedy trial requirement attaches. Under the
facts at bar, we do not find this argument persuasive. 
          Appellant bases his contention on the holding in United States v. Mauro, 436 U.S.
340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), in which the Supreme Court held that the
federal government became bound to observe the requirements of article IV(c) by filing a
detainer against a state prisoner and then obtaining his custody by means of a writ of
habeas corpus ad prosequendum issued by the district court. 436 U.S. at 349; 98 S.Ct.
at 1842. The Court found that the writ of habeas corpus ad prosequendum issued by the
federal district court constituted a “request for temporary custody” under article IV(a) of the
IADA. 436 U.S. at 361-62; 98 S.Ct. at 1848. Appellant contends Mauro requires the same
conclusion regardless of the procedure used by the requesting state to obtain the
prisoner’s presence for trial, and the State thus was required to bring him to trial within 120
days of his arrival in Texas following his extradition. 
          Commonwealth v. Wilson involved a prisoner who had a detainer lodged by
Massachusetts law enforcement officers against him while he was imprisoned in New
Hampshire. 504 N.E.2d. at 1061. Like appellant, the prisoner’s presence in
Massachusetts for trial was arranged between the governors of the two states pursuant to
the Massachusetts version of the UCEA. Id. at 1062. Rejecting an argument like that
made by appellant here, the Supreme Judicial Court of Massachusetts held that the
governors’ agreement was not the equivalent of a written request “approved, recorded, and
transmitted” by a court, as required by art. IV(a) of the IADA. Id. at 1064.


 In State v.
Davis, the Missouri court reached the same conclusion in a similar factual setting. 210
S.W.3d at 236-37. 
          We agree with the Massachusetts and Missouri courts’ holdings. We agree also
with the holding of our sister court in Waco in Ex parte Doster, that “nothing in Mauro nor
in article 51.13 or article 51.14 leads us to conclude that an executive request for
extradition under article 51.13 is the equivalent of a judicial writ or request under article
51.14.” No. 10-08-0276-CR, 2009 WL 455397, at *3, 2009 Tex. App. Lexis 1286, at *8
(Tex.App.–Waco February 4, 2009, pet. filed). The Supreme Court in Mauro was applying
the language of article IV(a) of the IADA, stating it saw “no reason to give an unduly
restrictive meaning to the term ‘written request for temporary custody.’ It matters not
whether the Government presents the prison authorities in the sending State with a piece
of paper labeled ‘request for temporary custody’ or with a writ of habeas corpus ad
prosequendum demanding the prisoner’s presence in federal court on a certain day; in
either case the United States is able to obtain temporary custody of the prisoner.” 436
U.S. at 362, 98 S.Ct. at 1848. By the express terms of article IV(a), the request for
temporary custody must be “approved, recorded, and transmitted” by the court having
jurisdiction of the pending indictment, information or complaint. The court-issued writ of
habeas corpus ad prosequendum meets that express requirement. The governor’s 
demand for appellant’s rendition and arrest pursuant to the UCEA does not.
Conclusion 
          The 120-day speedy trial requirement stated in article IV(c) applies “[i]n respect of
any proceeding made possible by this article . . . .” Even though appellant’s extradition to
Texas pursuant to a governor’s warrant was preceded by the lodging of a detainer, his
extradition was not accomplished by means of a request for temporary custody under
article IV. Accordingly, his prosecution in Gray County is not a “proceeding made possible
by” article IV, and the 120-day requirement has no application. The trial court did not err
by denying appellant his requested habeas corpus relief. Its order is affirmed.
Order on State’s Motion to Accelerate Appeal
          On May 11, 2009, the State simultaneously filed its appellate brief and a motion
entitled “State’s Motion to Accelerate Appeal.” Also on May 11, this court set oral
argument on the appeal for May 20. Otherwise, we carried the State’s motion with the
appeal. Appellant has filed no response to the State’s motion. The State’s motion is
granted; the court has heard the case at the earliest practicable time as required by Rule
of Appellate Procedure 31.2. Tex. R. App. P. 31.2.
 
                                                                           James T. Campbell

                                                                                    Justice









Publish.