NO. 07-09-0063-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 26, 2009
_____

EX PARTE LEVI ALEXAS KING
_____

FROM THE 31ST DISTRICT COURT OF GRAY COUNTY;

NO. 7202, 7203 AND 7924; HONORABLE STEVEN R. EMMERT, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant Levi Alexas King is charged by three indictments with capital murder. The State obtained his return to Texas from incarceration in Missouri. Contending he was denied a speedy trial under article IV of the Interstate Agreement on Detainers Act (IADA),[1] appellant sought dismissal of the indictments by pre-trial writ of habeas corpus in the trial court. The trial court denied relief and appellant appeals. We will affirm.

_____

[1] Texas enacted the IADA as article 51.14 of the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 51.14, article IV(a) (Vernon 2006).

Background

In 2005, appellant was arrested in El Paso on a felony warrant from Missouri and transported to that state by its officers. Gray County, Texas, subsequently charged appellant with capital murder through three indictments. The Sheriff of Gray County submitted a warrant for the arrest of appellant to the Missouri Department of Corrections. By letter, that agency acknowledged a detainer[2] was placed on appellant. Appellant was tried on the Missouri charges, and on April 18, 2008, sentenced there to two consecutive life sentences without parole. By documents transmitted May 9, 2008, to the Governor of Missouri, the Governor of Texas demanded the rendition and arrest of appellant for return to Texas. In response, Missouri officials delivered appellant to Texas authorities. He arrived in Texas in the custody of the Hemphill County Sheriff on July 11, 2008. The trial court issued a scheduling order on August 12 setting appellant's case for trial on January 19, 2009.

Appellant filed a motion on September 10, 2008, requesting a speedy trial according to article 51.14, article IV(c). He subsequently sought release from the indictments by pre-trial writ of habeas corpus alleging he was denied a speedy trial as required by article

---

[2] "A detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." *United States v. Mauro,* 436 U.S. 340, 359, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329 (1978) (*quoting* H.R. Rep. No. 91-1018, p. 2 (1970); S. Rep. No. 91-1356, p. 2 (1970)).

51.14, article IV(c).[3]  Following a February 17 hearing, the trial court denied the requested relief.  This appeal followed.

Discussion

Through one issue appellant contends that because the trial court did not commence his trial within 120 days of his arrival in Texas, as required by the IADA, it erred by failing to dismiss the pending indictments with prejudice.  The State counters that appellant was not returned to Texas under the IADA but was extradited according to the Uniform Criminal Extradition Act (UCEA)[4] which contains no speedy trial provision.

The facts in this case are not in dispute.  Rather, the parties disagree over the application of law to those facts.  We review *de novo* the trial court's resolution of questions turning on the application of legal standards.  *Ex parte Peterson,* 117 S.W.3d 804, 819 (Tex.Crim.App. 2003) (per curiam), *overruled in part on other grounds by Ex parte Lewis,* 219 S.W.3d 335, 371 (Tex.Crim.App. 2007).

The IADA "is a compact entered into by 48 States, the United States, and the District of Columbia to establish procedures for resolution of one State's outstanding charges against a prisoner of another State."  *New York v. Hill,* 528 U.S. 110, 111, 120

---

[3] For a prisoner returned to the receiving state according to article 51.14, article IV, failure to commence trial within 120 days of the prisoner's arrival in the receiving state requires dismissal of the charging instrument with prejudice.  Tex. Code Crim. Proc. Ann. art. 51.14, art. V(c) (Vernon 2006).

[4] The UCEA in Texas is codified as article 51.13 of the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 51.13 (Vernon 2006).  Missouri also has adopted the UCEA.  Mo. Ann. Stat. §§ 548.011 to 548.300 (WestLaw 2009).

S.Ct. 659, 662, 145 L.Ed.2d 560 (2000); *see* Historical and Statutory Notes, Tex. Code Crim. Proc. Ann. art. 51.14 (Vernon 2006).  The party states include both Texas and Missouri.[5]  Article I of the IADA, reciting that "charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation," declares "it is the policy of the party states and the purpose of [IADA] to encourage the expeditious and orderly disposition of such charges and determination of the proper status of . . . detainers based on untried indictments, informations, or complaints."  Tex. Code Crim. Proc. Ann. art. 51.14, art. I (Vernon 2006).

The older UCEA also "establishes procedures for the interstate transfer of persons against whom criminal charges are outstanding." *Cuyler v. Adams,* 449 U.S. 433, 436 n.1, 101 S.Ct. 703, 705 n.1, 66 L.Ed.2d 641 (1981); *see State v. Davis*, 210 S.W.3d 229, 236 (Mo.App. W.D.2006) (IADA not exclusive means of obtaining return of a prisoner); *Commonwealth v. Wilson,* 504 N.E.2d 1060, 1064 (Mass. 1987) (same)*.*  Following the language of the Extradition Clause of the United States Constitution,[6] the UCEA speaks

---

[5]  Mo. Rev. Stat. § 217.490 (WestLaw 2009).

[6] The Extradition Clause, art. IV § 2, cl. 2, of the United States Constitution reads:

> A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

> The Clause creates a "mandatory duty to deliver up fugitives upon proper demand." *Puerto Rico v. Branstad,* 483 U.S. 219, 226, 107 S.Ct. 2802, 2807, 97 L.Ed.2d 187 (1987).

in terms of a demand by the executive of a state placed on the executive of another state for delivery of a fugitive from justice. Within the bounds of the constitution and applicable law, the UCEA requires the governor of a sending state to have a fugitive[7] arrested and delivered to the executive authority of the receiving state. Tex. Code Crim. Proc. Ann. art. 51.13, § 2 (Vernon 2006). The IADA applies to persons serving a term of imprisonment; the UCEA applies both to incarcerated individuals[8] and those at liberty.

As article I of the IADA suggests, its provisions are activated by the lodging of a detainer by a party state on a pending indictment, information or complaint against a prisoner incarcerated in another state. A detainer is lodged when it is "filed" with the custodial institution. *State v. Miles,* 101 S.W.3d 180, 183-84 (Tex.App.–Dallas 2003, no pet.) (*citing Ex parte Bynum,* 772 S.W.2d 113, 115 (Tex.Crim.App. 1989)). When a detainer is lodged, the prisoner can take steps, set forth in IADA's article III, to cause the indictment, information or complaint on which the detainer was based to be speedily resolved. Tex. Code Crim. Proc. Ann. art. 51.14, art. III (Vernon 2006). This appeal does not involve the provisions of article III.

By following procedures set forth in article IV of IADA, the "appropriate officer" of the jurisdiction in which an indictment, information or complaint is pending is entitled to

---

[7] "[I]f a person was present in the demanding state at the time it is alleged an offense was committed and leaves that state thereafter for any reason, whether connected with the alleged offense or not, and is found in the sending state, he is a fugitive from justice and subject as such to extradition." *Ex parte Robertson,* 151 Tex. Crim. 635, 636-637, 210 S.W.2d 593, 594 (1948).

[8] Section 5 of the UCEA, Tex. Code Crim. Proc. Ann. art. 51.13 (Vernon 2006), provides specifically for extradition of a person imprisoned in another state.

have the prisoner against whom the officer has lodged a detainer "made available" for prosecution. Article V further provides that in response to a request made under article IV, the state having custody of the prisoner shall offer to deliver temporary custody of the prisoner for "speedy and efficient prosecution" of the pending charge. Tex. Code Crim. Proc. Ann. art. 51.14, art. V(a) (Vernon 2006).

The procedure set forth in article IV(a) requires, inter alia, presentation to the sending state of a written request for temporary custody "approved, recorded, and transmitted" by the court having jurisdiction of a charge pending against the prisoner. Art. 51.14, art. IV(a). Once the prisoner arrives in the receiving state, trial must commence within 120 days unless continued by the trial court for "good cause." Art. 51.14, art. IV(c). The IADA thus enables a party state "to obtain custody of an out-of-state prisoner for prosecution, and in exchange, imposes some duties upon that state to ensure that the prisoner is quickly returned. This arrangement is thus contractual in nature, and the prosecuting authorities submit to this contract when they obtain a prisoner through the IADA." *State v. Williams,* 938 S.W.2d 456, 460 (Tex.Crim.App. 1997). The consequence of failure to begin trial within the 120-day period is dismissal of the indictment with prejudice. Art. 51.14, art. V(c).

Here, the State does not dispute that a detainer was lodged against appellant. Undisputed evidence admitted at the habeas writ hearing also documents the procedure by which appellant was returned to Texas. The record contains a written request from the District Attorney of Gray County to the extradition coordinator for the office of the Governor of Texas. The governor's demand for rendition and arrest of appellant, along with

6

documentation citing the Extradition Clause and article 51.13 as authority for appellant's return to Texas, were forwarded by the office of the Governor of Texas to the office of the Governor of Missouri. The record does not contain evidence of compliance with the IADA's requirements with respect to appellant's transfer. Most significantly, nothing in the record indicates the trial court "approved, recorded, and transmitted" a written request for temporary custody of appellant in Texas, as is required by the IADA.

Nonetheless, appellant contends that even if his return to Texas was accomplished according to the UCEA, the IADA's 120-day speedy trial requirement attaches. Under the facts at bar, we do not find this argument persuasive.

Appellant bases his contention on the holding in *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), in which the Supreme Court held that the federal government became bound to observe the requirements of article IV(c) by filing a detainer against a state prisoner and then obtaining his custody by means of a writ of habeas corpus *ad prosequendum* issued by the district court. 436 U.S. at 349; 98 S.Ct. at 1842. The Court found that the writ of habeas corpus *ad prosequendum* issued by the federal district court constituted a "request for temporary custody" under article IV(a) of the IADA. 436 U.S. at 361-62; 98 S.Ct. at 1848. Appellant contends *Mauro* requires the same conclusion regardless of the procedure used by the requesting state to obtain the prisoner's presence for trial, and the State thus was required to bring him to trial within 120 days of his arrival in Texas following his extradition.

*Commonwealth v. Wilson* involved a prisoner who had a detainer lodged by Massachusetts law enforcement officers against him while he was imprisoned in New Hampshire. 504 N.E.2d. at 1061. Like appellant, the prisoner's presence in Massachusetts for trial was arranged between the governors of the two states pursuant to the Massachusetts version of the UCEA. *Id*. at 1062. Rejecting an argument like that made by appellant here, the Supreme Judicial Court of Massachusetts held that the governors' agreement was not the equivalent of a written request "approved, recorded, and transmitted" by a court, as required by art. IV(a) of the IADA. *Id.* at 1064.[9] In *State v. Davis*, the Missouri court reached the same conclusion in a similar factual setting. 210 S.W.3d at 236-37.

We agree with the Massachusetts and Missouri courts' holdings. We agree also with the holding of our sister court in Waco in *Ex parte Doster,* that "nothing in *Mauro* nor in article 51.13 or article 51.14 leads us to conclude that an executive request for extradition under article 51.13 is the equivalent of a judicial writ or request under article 51.14." No. 10-08-0276-CR, 2009 WL 455397, at *3, 2009 Tex. App. Lexis 1286, at *8 (Tex.App.–Waco February 4, 2009, pet. filed). The Supreme Court in *Mauro* was applying the language of article IV(a) of the IADA, stating it saw "no reason to give an unduly restrictive meaning to the term 'written request for temporary custody.' It matters not whether the Government presents the prison authorities in the sending State with a piece

---

[9] Following *Mauro*, the court there went on to hold that a writ of habeas corpus *ad prosequendum* issued by the Massachusetts trial court did constitute such a written request, but found no violation of the 120-day speedy trial requirement because the defendant was brought to trial within 120 days of the granting of the writ. 504 N.E.2d at 1065.

of paper labeled 'request for temporary custody' or with a writ of habeas corpus *ad prosequendum* demanding the prisoner's presence in federal court on a certain day; in either case the United States is able to obtain temporary custody of the prisoner." 436 U.S. at 362, 98 S.Ct. at 1848. By the express terms of article IV(a), the request for temporary custody must be "approved, recorded, and transmitted" by the court having jurisdiction of the pending indictment, information or complaint. The court-issued writ of habeas corpus *ad prosequendum* meets that express requirement. The governor's demand for appellant's rendition and arrest pursuant to the UCEA does not.

Conclusion

The 120-day speedy trial requirement stated in article IV(c) applies "[i]n respect of any proceeding made possible by this article . . . ." Even though appellant's extradition to Texas pursuant to a governor's warrant was preceded by the lodging of a detainer, his extradition was not accomplished by means of a request for temporary custody under article IV. Accordingly, his prosecution in Gray County is not a "proceeding made possible by" article IV, and the 120-day requirement has no application. The trial court did not err by denying appellant his requested habeas corpus relief. Its order is affirmed.

*Order on State's Motion to Accelerate Appeal*

On May 11, 2009, the State simultaneously filed its appellate brief and a motion entitled "State's Motion to Accelerate Appeal." Also on May 11, this court set oral argument on the appeal for May 20. Otherwise, we carried the State's motion with the

9

appeal. Appellant has filed no response to the State's motion. The State's motion is granted; the court has heard the case at the earliest practicable time as required by Rule of Appellate Procedure 31.2. Tex. R. App. P. 31.2.


James T. Campbell
Justice


Publish.