Affirmed
and Opinion filed September 10, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00766-CR

____________

 

DARNELL THOMAS CELESTINE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 184th
District Court

Harris County, Texas

Trial Court Cause No. 1128700

 



 

O P I N I O N

Appellant Darnell Thomas Celestine pleaded
guilty to prohibited sexual conduct and was sentenced to two years= imprisonment.  In
three issues, appellant contends that the trial court erred in denying his
motion to dismiss the indictment pursuant to the Interstate Agreement on
Detainers Act and the speedy trial provisions of the Federal and Texas
Constitutions.  We affirm.








On August 10, 2007, the State filed a
complaint alleging that appellant sexually assaulted the complainant, his half‑sister,
in Harris County.  On September 3, 2007, a magistrate found probable cause for
appellant=s continued detention and committed him to the Harris
County Sheriff=s custody.  An attorney was appointed for appellant,
and on October 3, 2007, the parties agreed to set appellant=s arraignment for
October 25, 2007.  On October 25, 2007, the parties agreed to reset the
arraignment for November 30, 2007. On November 26, 2007, a grand jury indicted
appellant for sexually assaulting the complainant.  On November 30, 2007, the
parties agreed to set the case for disposition on December 17, 2007, and the
trial court ordered appellant to submit DNA samples to the Sheriff=s Office upon request. 
The notation AHarris County notified of arrest in LA 08‑27‑07@ appears on the
November 30 agreed setting form.  Repeated agreed settings postponed trial
until July 18, 2008.  Some of the agreed setting forms during that time
included notations suggesting that DNA testing was occurring.[1]

On March 26, 2008, the same day the
parties agreed to set the case for trial on July 18, 2008, appellant=s trial counsel
filed a motion to dismiss asserting that appellant had been held for more than
120 days without trial in violation of Texas Code of Criminal Procedure article
51.14, by which Texas enacted the Interstate Agreement on Detainers Act (AIADA@).  Tex. Code Crim. Proc. Ann. art. 51.14
(Vernon 2006).  On July 17, 2008, appellant filed a pro se motion to dismiss,
which his trial counsel adopted.  In it, appellant asserted that he was on
probation in Louisiana when the State filed its complaint, for which he was
arrested in Louisiana on August 22, 2007.  He claimed that he was extradited to
Harris County under the IADA on September 2, 2007, that his Sixth Amendment
rights were being violated Abecause he ha[d] not been to trial,@ and that the
prosecution should be dismissed with prejudice under the IADA.








At the pretrial motions hearing on July
18, appellant acknowledged that he was still on probation in Louisiana. 
Appellant testified that he was at home in Louisiana when he learned of the
Harris County sexual assault charges and turned himself in to Louisiana
authorities after learning that they had issued a Aprobation
violation and detainer@ as a result of the Harris County case. 
According to appellant, he appeared before a Louisiana court a few days later,
where he was notified of the Texas charges.  He testified that the Louisiana
court asked if he would like to be extradited to Harris County and had him sign
paperwork to begin the extradition process.  The trial court took judicial
notice of its file and stated that there Ais no paperwork
regarding extradition in the [trial court=s] file, nor is
there any request or notice from the defendant that he desired to be tried
within a specific time period@ and that the trial court was Anever given any
notice until [July 17] that the [d]efense wished to have a trial within@ the time
limitations of the IADA.  Although the trial court did not mention the March
26, 2008 motion to dismiss based on a violation of the IADA, in arguments prior
to the trial court=s ruling the defense pointed out that at
the Alast court
setting,@ which was on
March 26, the defense Aasked for a 120-day setting from the last
time we became aware of the interstate violation and got a trial date within
120 days from that.@  The trial court denied appellant=s motion to
dismiss.  Appellant pleaded guilty pursuant to a plea bargain and this appeal
followed.

I.  The Interstate Agreement on Detainers Act

In his first and second issues, appellant
contends that the trial court erred in denying his motion to dismiss under the
IADA.  Specifically, appellant argues that the trial court erred because (1)
the State did not bring him to trial within 180 days after receiving his
written notice of his place of imprisonment and his request for a final
disposition of the charges pursuant to Article III of the IADA and (2) the
State did not bring him to trial within 120 days of his arrival in Texas
pursuant to Article IV of the IADA.








The IADA is a congressionally sanctioned
compact, so its interpretation is a question of federal law.  Cuyler v.
Adams, 449 U.S. 433, 438 (1981).  The IADA Aprescribes
procedures by which a member state may obtain for trial a prisoner
incarcerated in another member jurisdiction and by which the prisoner
may demand the speedy disposition of certain charges pending against him in
another jurisdiction.@  United States v. Mauro, 436 U.S.
340, 343 (1978) (emphasis added).  The IADA=s purpose is to
encourage the expeditious and orderly disposition of Acharges
outstanding against a prisoner, detainers based on untried indictments,
informations, or complaints, and difficulties in securing speedy trial of
persons already incarcerated in other jurisdictions@ on the rationale
that such charges and detainers Aproduce
uncertainties which obstruct programs of prisoner treatment and rehabilitation.@  See Tex. Code Crim. Proc. Ann. art. 51.14,
art. I.  Under Article III of the IADA, a prisoner serving a term of
imprisonment in one party state subject to a detainer from another party state
must be brought to trial within 180 days after he delivers to the charging
state written notice of his place of imprisonment and his request for a final
disposition of the indictment against him in compliance with the IADA.  Id.
art. III(a).  Under Article IV of the IADA, Atrial shall be
commenced within 120 days of the arrival of the prisoner in the receiving
state.@  Id. art.
IV(c).  We review the legal question of whether the IADA was complied with de
novo, but review the trial court=s factual findings
in that regard under a Aclearly erroneous@ standard.  Walker
v. State, 201 S.W.3d 841, 845 (Tex. App.CWaco 2006, pet.
ref=d); State v.
Miles, 101 S.W.3d 180, 183 (Tex. App.CDallas 2003, no
pet.).








As a preliminary matter, we must determine
whether the IADA applies here.  The IADA is contractual in nature.  State v.
Williams, 938 S.W.2d 456, 460 (Tex. Crim. App. 1997).  Though Texas is a
member state of the IADA, Louisiana is not.  See Braxton v. Dunn,
803 S.W.2d 318, 320 (Tex. Crim. App. 1991) (stating that Louisiana is not a
signatory to the IADA); Jones v. State, No. 14-04-00107-CR, 2005 WL
5341160, at *2 (Tex. App.CHouston [14th Dist.] Mar. 15, 2005, no
pet.) (mem. op., not designated for publication) (stating that Louisiana is not
a party to the IADA).  The IADA=s procedures do not apply to member states
in their dealings with non-member states.  See Robinson v. United States,
580 F.2d 783, 784 (5th Cir. 1978) (stating that under the language of Article
IV, the terms of the IADA are only operative in transactions between party
states and that the IADA=s procedures do not apply to the United
States in its dealings with non-party states); Mauro, 436 U.S. at 354
(noting that Athe United States is a party to the [IADA] as both a
sending and a receiving [s]tate@).  Moreover, the plain language of
Article III clearly contemplates that the IADA is only binding upon party
states[2]
and demonstrates that the IADA is inapplicable where, as here, a defendant
brought from a non-party state claims the IADA=s protections in a
Texas prosecution.  See Jones, 2005 WL 5341160, at *2 (rejecting
argument of defendant brought from Louisiana to Texas for prosecution that
Texas was still required to comply with the IADA as a party despite Louisiana
being a non-party); see also Braxton, 803 S.W.2d at 320 (implying that
IADA was inapplicable to prisoner located in Louisiana because Louisiana is not
a signatory to the IADA).  Therefore, the IADA=s procedures do
not apply to Texas in its dealings with Louisiana.  We overrule appellant=s first and second
issues.

II.  Speedy Trial








In his third issue, appellant argues the
State violated his right to a speedy trial under the United States and Texas
Constitutions.  See U.S. Const.
amend. VI, XIV; Tex. Const. art.
I, ' 10; see also
Barker v. Wingo, 407 U.S. 514, 515 (1972) (stating that the Sixth Amendment
right to a speedy trial under the Federal Constitution applies to the states
through the Fourteenth Amendment).  To determine whether the State violated
appellant=s right to a speedy trial under the Federal or State
constitutions, we must weigh and then balance the same four factors: (1) length
of the delay, (2) reason for the delay, (3) assertion of the right, and (4)
prejudice to the accused.  See Barker, 407 U.S. at 530 (creating the
balancing test for reviewing speedy trial claims under the Federal
Constitution); Cantu v. State, 253 S.W.3d 273, 280 n.16 (Tex. Crim. App.
2008) (noting that although the speedy trial right under the Texas Constitution
exists independently of the federal guarantee, claims of a denial of the State
speedy trial right are analyzed under the same four Barker factors). 
The Barker test is triggered by a delay that is unreasonable enough to be
Apresumptively
prejudicial.@[3]  Doggett v.
U.S., 505 U.S. 647, 652 n.1 (1992).  Once the Barker test is
triggered, we must analyze the speedy-trial claim by first weighing the
strength of the Barker factors and then balancing their relative weights
in light of the conduct of both the prosecution and the defendant.  Cantu,
253 S.W.3d at 281.  None of the Barker factors is a necessary or
sufficient condition to finding a speedy trial violation.  Id.  Rather,
the factors are related and should be evaluated in conjunction with any other
relevant considerations.  Id.  In reviewing the trial court=s ruling, we
review the legal components de novo and review the factual components for an
abuse of discretion.  See id. at 282.








A delay approaching one year from formal
accusation or arrest of the defendant until trial has generally been found to
be presumptively prejudicial, triggering the Barker inquiry.  See id.
at 281; Shaw v. State, 117 S.W.3d 883, 888B89 (Tex. Crim.
App. 2003); see also U.S. v. Marion, 404 U.S. 307, 313 (1971) (stating
that delay is measured from time of formal accusation or arrest until the
defendant is brought to trial).  However, we have previously held that the time
covered by agreed resets is to be excluded from speedy trial consideration, Caicedo
v. State, 769 S.W.2d 597, 598 (Tex. App.CHouston [14th
Dist.] 1989, no pet.), and have stated in reliance on that precedent that
agreed resets are Ainconsistent with assertion of a speedy
trial right, and the delay covered by such resets should not be included in
speedy trial computations.@  State v. Kuri, 846 S.W.2d 459,
463 (Tex. App.CHouston [14th Dist.] 1993, pet. ref=d).  Here, the
State filed a complaint against appellant on August 10, 2007 and brought him to
trial on July 18, 2008, a delay of more than eleven months.  The time from
October 3, 2007 until July 18, 2008, however, was covered by agreed settings. 
Excluding that time from the speedy trial computation leaves a delay of less
that two months, which is not presumptively prejudicial.  See Cantu, 253
S.W.3d at 281 (noting previous holding that four-month delay is insufficient to
trigger Barker inquiry) (citing Pete v. State, 501 S.W.2d 683,
687 (Tex. Crim. App. 1973)).  Appellant argues that the notations regarding DNA
on some of the agreed settings show that they were solely for the State=s benefit.  Even
if we assume that the notations show that DNA testing occurred, agreed resets
for that purpose are not necessarily solely for the State=s benefit because
such testing could yield either exculpatory or inculpatory evidence. 
Therefore, we exclude the time covered by those agreed settings in the length
of delay calculation and hold that this case does not involve a presumptively
prejudicial delay.  See Kuri, 846 S.W.2d at 463.  Without a
presumptively prejudicial delay, Athere is no
necessity for inquiry into the other [Barker] factors,@ and we must
affirm the trial court=s judgment.  See Barker, 407 U.S.
at 530; see also Pete, 501 S.W.2d at 687.  We therefore overrule
appellant=s third issue.

Having overruled all of appellant=s issues, we
affirm the trial court=s judgment.

 

 

/s/      Leslie
B. Yates

Justice

 

 

Panel consists of Chief Justice Hedges and Justices
Yates and Frost.

Publish C Tex. R. App. P. 47.2(b).









[1]  These notations included AState to submit buccal swab from [defendant],@ ADNA submitted?,@ and ADNA.@





[2]  Article III of the IADA provides in relevant part:

Whenever a person has entered upon a term of
imprisonment in a penal or correctional institution of a party state,
and whenever during the continuance of the term of imprisonment there is
pending in any other party state any untried indictment, information, or
complaint on the basis of which a detainer has been lodged against the
prisoner, he shall be brought to trial within 180 days . . . .

Tex.
Code Crim. Proc. Ann. art. 51.14, art.
III(a) (emphasis added).

 





[3]  AThe length of
the delay is to some extent a triggering mechanism. Until there is some delay
which is presumptively prejudicial, there is no necessity for inquiry into the
other factors that go into the balance . . . .@  Barker, 407 U.S. at 530.